IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JAMES DAVID WATWOOD,**

    Petitioner,

v.                                       Civil Action No. **3:22CV381**

**LARRY T. EDMUNDS,**

    Respondent.

## MEMORANDUM OPINION

James David Watwood, a Virginia state prisoner proceeding *pro se*, brings this petition

pursuant to 28 U.S.C. § 2254 challenging his convictions in the Circuit Court of Chesterfield

County of two counts of indecent liberties, six counts of sodomy, and six counts of object sexual

penetration. In order to provide context for Watwood's claims, it is appropriate to summarize the

evidence of his guilt.[1]

### I. Summary of the Evidence

On appeal, the Virginia Court of Appeals rejected Watwood's contention that the evidence

was insufficient to support his convictions. In doing so, the Court of Appeals aptly summarized

the relevant evidence as follows:

> Appellant is the ex-husband of the victim's mother. At the time of the
> offenses, appellant and the victim's mother were married and the family resided
> together in Chesterfield County from August 2013 to January of 2014. The victim
> was twelve years old at the time of trial. The victim testified that, when he was
> nine years old, on six different occasions, appellant came into his bedroom at night
> when the rest of his family was sleeping. The victim stated that, during the first
> incident, he was asleep in his bed, and appellant shook him to awaken him.
> Appellant, wearing only a robe, asked the victim to "put [his] mouth on
> [appellant's] private area," saying, "Come suck on this for me." The victim
> testified that a private part is a penis. The victim stated that, during the act, appellant

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court
corrects the spelling, capitalization, and footnote numbers in the quotations in the record.

said, "Oh, this feels good," "You know you like this kind of thing," and "You knew this was coming." The victim testified that having to engage in this conduct was "disgusting and gross," and appellant "kind of peed or something" on him during the act. The victim described the "pee" as "stickyish" and stated that it had "a small scent to it."

The victim testified that after appellant "peed" on him, appellant told the victim to remove his own pants, and appellant "tried to stick his private area up [the victim's] butt." The victim stated that he was "really nervous" and "couldn't think properly," so he did what appellant told him to do. When appellant tried to put his penis into the victim's "butt," the victim "squeezed [his] butt cheeks together to keep that from happening." The victim also testified that it felt "very weird and hard and gross" and that appellant then used his finger to penetrate the victim's anus. The victim stated that, after appellant "was done and left the room," the victim "had to poop." After appellant left the victim's bedroom, the victim was afraid that appellant was watching his bedroom door because appellant had threatened him by saying that he would kill the victim and his mother if the victim told anyone. Because the victim was afraid to leave his bedroom, he defecated in his bed.

According to the victim, in each subsequent occurrence, when appellant came to his bedroom late at night, "it basically happened nearly the same way" as the first event. However, during the second incident, appellant grabbed the victim's arm on his "pressure points," and squeezed with his thumb, causing the victim pain. The victim also stated that while the victim was performing oral sex on appellant, appellant grabbed the victim's head and moved it back and forth. Appellant then told the victim to lie on his bed on his stomach, and appellant anally penetrated the victim with his fingers. The victim stated that he heard a "thump" when appellant walked into his room, and the victim was afraid that appellant might have had a weapon and might kill him. Appellant threatened the victim during the second incident. In addition, after appellant had finished penetrating the victim with his finger, the victim had to defecate again, but was afraid to leave his room because of appellant's threats. The victim "poop[ed]" in his underwear and stayed awake until dawn, then he "put the poop in the toilet." The victim testified that, on the third occasion, appellant told the victim to put his mouth on appellant's penis, appellant "peed" on the victim, appellant put his finger in the victim's butt, and the victim "pooped" in his underwear.

The victim began to hide from appellant, "sneaking downstairs" and hiding behind boxes, on the roof, or in a locked bathroom because he "didn't want any more of that happening to" him. The victim had noticed that appellant's abuse often took place when appellant had been "happy and having a great time" during the day.

On the fourth occasion, appellant told the victim to put his mouth on appellant's penis, and he placed his finger in the victim's "butt." As appellant left the victim's bedroom, he said to the victim that if he told his mother about appellant's conduct, then "he would kill her into pieces while she was alive and would make [the victim] watch it." The victim testified that he "tremble[d] and pooped" after appellant left his bedroom.

2

During the fifth assault, appellant told the victim to put his mouth on appellant's penis, he "peed" on the victim, he put his finger in the victim's "butt," and he punched the victim twice, causing bruising on the victim's ribs and the side of his eye. The victim did not know why appellant struck him. The victim testified that his mother noticed the bruise on the side of his eye, but he told her that he had run into the dresser.

On the sixth occasion, appellant committed the same acts of abuse. However, after appellant finished, he cut the victim's arm with a sharp blade or knife, leaving a scar. When the victim's mother saw the cut, the victim told her that he could not recall how he had cut his arm.

The victim did not initially report the abuse because he was afraid that appellant would find out and would hurt his family. The victim first reported the abuse about a year and a half after the last incident, when the victim was ten years old and the victim, his mother, and siblings had moved to Georgia. The victim had a "flashback" in the presence of his mother, prompting her to ask him questions about whether something had happened. The victim was at a store with his mother and siblings when he saw a checkerboard that reminded him of appellant because appellant had once become angry with the victim when they were playing checkers. The victim began yelling and shouting that he did not ever want to see appellant again because the checkerboard reminded him "of the many bad things and stuff." The victim's mother asked him what was wrong and, when they got home, he told her about appellant's conduct, but he did not report all of it because some of the information was "embarrassing." The victim also stated that he did not remember until later some of the things that had happened. The victim later told his therapist and doctor about the incidents. The victim's mother reported the incidents to the police.

On cross-examination, the victim testified that he had not discussed his trial testimony with his mother or siblings. The victim also stated that he had not discussed his testimony with the Commonwealth's Attorney, but that he had discussed the abuse with her several times. The victim acknowledged that he had said during his initial videotaped interview that the abuse had occurred on three occasions, but he stated that his trial testimony was correct — that the abuse took place on six occasions. He explained that during the taped interview, he had forgotten some of the "things," and he thought some of the "things" were too embarrassing, so he did not report them.

Appellant's counsel asked the victim if he had reported in his videotaped interview that appellant had "peed" on him three times in one fifteen-minute time period. The victim denied reporting this, stating that it was not three times in fifteen minutes, but three different times. The victim explained, "He didn't pee on me three times in one night." Again, defense counsel asked, "[D]id he pee on you three times on any one time that he was in your room, yes or no?" The victim responded, "No." The victim later clarified that the incidents took place six times, on six different dates. The victim testified that each episode of abuse lasted approximately ten to fifteen minutes.

The victim thought that appellant's "pee" had gotten on his bed and stuffed animals. However, the victim also thought that the babysitter had washed his

stuffed animals. Although the victim tried to avoid appellant because he was afraid of him, he was unable to completely avoid appellant at dinner or other times such as a few occasions when appellant drove him to school. The victim never reported that appellant had used a sex toy during the assaults.

Catherine Bivens, the victim's mother, adopted the victim from a Chinese orphanage when the victim was two years and two months old. Bivens later adopted two other children. Bivens stated that, while they lived with appellant, she did not suspect that appellant was sexually abusing the victim. However, during that time period, she witnessed appellant verbally abuse the victim. She heard appellant call the victim "a little fucker," "his little bitch," and a "God damn fuck." Bivens also stated that she had sometimes found the victim downstairs in the middle of the night and that the victim had become afraid of appellant because appellant yelled at him and called him names. Bivens knew that the victim tried to avoid appellant because he was afraid of appellant. She also noticed that the victim became more anxious, less confident, and wanted to lock his bedroom door when they lived with appellant. The victim told Bivens that he was afraid appellant was going to hurt him.

Bivens testified that appellant told her she snored, and he did not always sleep in their bedroom, telling her he was sleeping downstairs on a futon. However, when Bivens suggested moving the victim into a bedroom with his brother so that appellant could have his own bedroom, appellant said that he did not want the boys to share a bedroom. After Bivens moved with her children to Georgia, the victim told her that appellant had struck him several times. Bivens confirmed that she first learned about appellant's sexual abuse of the victim after the incident where the victim became upset when he saw the checkerboard. Bivens recalled that she had seen a bruise on the victim's eye when they were living with appellant. She also stated that the victim had a cut on his forearm while the family lived with appellant.

At trial, appellant denied that he sexually molested or physically abused the victim. Appellant testified that he had colon surgery in November of 2006 and, as a result of that surgery, he has erectile dysfunction. Dr. John Delisio, an expert in urology and appellant's urologist, confirmed that he had treated appellant for erectile dysfunction and enlarged prostate gland. Between January of 2013 and December of 2014, Dr. Delisio had written numerous prescriptions for appellant's erectile dysfunction, and he stated that appellant could reach an erection and ejaculation after taking the medication. Appellant acknowledged that Bivens once found the victim "cowering" behind boxes located on the first floor of the house.

After the victim disclosed the sexual abuse to his therapist, Leigh-Anne White, the victim created a trauma narrative over a period of ten months in which the victim described the acts of sexual abuse that appellant had committed with him. The victim reported to White that appellant entered his bedroom at night, shook him awake, made the victim put his mouth on appellant's penis, attempted to put his penis in the victim's "butt," and threatened the victim. The victim reported to White that the abuse took place on six occasions. The victim told White that he was afraid appellant would kill him after he reported the abuse.

Two of appellant's stuffed animals were tested for the presence of appellant's DNA; however, the examination did not disclose any seminal fluid on

4

the items.  The forensic scientist testified that, if the toys had been washed, she would not have expected to find seminal fluid on them.  Sergeant Agnew of the Chesterfield County Police Department testified that it was "extremely unlikely" that, eighteen months after an incident of sexual abuse, a medical examination of the victim would have disclosed any evidence.  Agnew stated that it would not have been in the victim's best interests to be submitted to an invasive medical where the expectation was that no evidence would be discovered.

In November of 2016, the police executed a search warrant at appellant's residence, looking for products used for sexual stimulation and child pornography. They did not find sex toys or child pornography.  The search warrant did not authorize the police to search for any electronic devices, and Sergeant Diocedo stated that most child pornography is located on electronic devices.  In addition, the search warrants were executed after appellant knew that he was under investigation in the case.

Appellant argues that the evidence was insufficient to prove that he committed the offenses based on the victim's incredible testimony, the lack of corroborating evidence, such as the presence of his DNA, the victim's "shifting" of events, the influence of the victim's mother, the delay in reporting the offenses, and the inappropriate preparation of the victim for trial.

. . . .

Here, the victim gave a consistent and detailed account of the six separate instances of sexual abuse committed by appellant.  The victim described instances where appellant forced the victim to commit fellatio, appellant tried to penetrate the victim's anus with his penis, and appellant penetrated the victim's anus with his finger.  The victim articulated how he was affected by appellant's conduct, that he was disgusted by the acts, and that he performed as appellant instructed him to do because appellant had threatened him and his family.  He also explained that he originally did not reveal all six instances of abuse because he was embarrassed, and he did not recall all of the details of the abuse until after he addressed the incidents in therapy.  The victim also clarified repeatedly at trial that there were six separate instances of sexual abuse by appellant and that he did not allege that appellant had ejaculated three times during one incident of abuse.

Although appellant argues that there was no corroborating evidence, there is no corroboration requirement for sexual offenses. . . .  Nevertheless, Bivens' testimony corroborated the victim's testimony that he avoided appellant, that he was afraid of appellant, and that appellant was verbally abusive to the victim. Bivens also recalled that the victim hid at night on occasion and that he once had a bruise near his eye and a cut on his arm.  In addition, sometime after the family moved away from appellant, the victim reported to his therapist that appellant entered his bedroom at night, shook him awake, made the victim put his mouth on appellant's penis, attempted to put his penis in the victim's "butt," and threatened the victim.  The victim explained that he did not immediately report the incidents because he was afraid that appellant would hurt him or his family as appellant had threatened to do.  In addition, the victim stated that he did not initially report all of appellant's conduct because he was embarrassed.  The victim's delay in reporting the abuse was "explained by and [was] completely consistent with the all too

common circumstances surrounding sexual assault on minors -- fear of disbelief by others and threat of further harm from the assailant." *Woodard v. Commonwealth*, 19 Va. App. 24, 28 (1994). "The victim's youth, fright and embarrassment certainly provided the jury with an acceptable explanation for his behavior in these circumstances." *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991).

       In addition, although the victim testified that he believed appellant's "pee" had gotten on a few of his stuffed animals, he also stated that he believed the stuffed animals had been washed. The forensic scientist explained that if the victim's stuffed animals were washed, it was unlikely that these items would contain appellant's DNA. Also, no evidence indicated that the victim had been inappropriately prepared for trial or that his mother had influenced his trial testimony. Moreover, there was no medical examination of the victim because it was unlikely that any evidence would have been recovered from such an examination since appellant first reported the incidents more than one year after they occurred.

*Watwood v. Commonwealth*, No. 0298-18-2, at 1–8 (Va. Ct. App. Dec. 28, 2018) (alterations in original).

## II. Applicable Constraints Upon Habeas Review

       In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

       **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

       **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).  Given this standard, the decision of the Supreme Court of Virginia, with respect to Watwood's claims, figures prominently in this Court's opinion.

### III.  Watwood's Claims

In his lengthy § 2254 Petition, Watwood argues that he is entitled to relief based upon the following claims:[2]

| | |
|---|---|
| Claim 1 | "Identity - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel did not pursue the mistaken or fabricated identification of the Defendant as the perpetrator.  Trial Counsel did not request an identity evidentiary hearing, a penis/abdomen photo lineup, and did not object to the in-court identification." (ECF No. 1 at 17.) |
| Claim 2 | "Speedy Trial - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel failed to prepare for and understand constitutional law and State statutes, and challenge the Commonwealth's delay in prosecuting the Defendant with proper motion practice." (*Id.* at 20.) |
| Claim 3 | "Incompetent Evidence Admission - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel failed to analyze available evidence, prepare, argue (backed by case law, cite authority), file a motion for an evidentiary hearing, and object when required to the presentment of the Complainant's perjured, tainted, and incompetent allegations, and the subsequent admission of the Complainant's Trial testimony by the Court." (*Id.* at 24.) |
| Claim 4 | "Hearsay Evidence Admission - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel failed to know the law and object to the admission of hearsay evidence without the prerequisite hearing taking place |

---

[2] Watwood's § 2254 Petition, along with supporting documents, is 875 pages long.  In quoting Watwood's claims, the Court omits any prompts to which Watwood is responding.

first. Trial Counsel failed to preserve this issue for appellate review." (*Id.* at 28.)

Claim 5      "Complainant's Competency - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel failed to challenge the competency of the Complainant through preparation, judicial notice, motions, expert testimony, competency hearing, and voir dire. Trial Counsel also failed to properly preserve the error for appellate review." (*Id.* at 31.)

Claim 6      "Complainant's Records - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel failed to recognize, prepare, object, cite authority, and argue points of law and constitutional issues in response to the actions of the Prosecution and Court that denied access to the Defendant['s] motive, impeachment, competency, therapy process, credibility and exculpatory evidence from the Complainant's mental health records." (*Id.* at 36.)

Claim 7      "Expert Witness Denial - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel failed to prepare, cite authority, and object to the Court's ruling denying the in-court testimony of the mental health professionals who created the records of the Complainant. Trial Counsel did not properly preserve the issue for appellate review." (*Id.* at 40.)

Claim 8      "Jury - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel failed to object to gender bias and procedural error by the Prosecution and Court during the selection of the petit jury resulting in gender bias. (*Id.* at 43.)

Claim 9      "Trial Counsel Hearing Impediment - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel could not hear (and the Court recognized but failed to accommodate their hearing impediment) the responses of the Complainant during direct and cross-examination. Trial Counsel did not object nor did they seek a solution to the issue other than to ask the Court to get closer to the Complainant (which was denied by the Court). Trial Counsel did not properly preserve this issue for appellate review." (*Id.* at 46.)

Claim 10     "Witness Testimony Exclusion - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel failed to prepare for, cite authority, object and properly argue against the Court's two evidentiary rulings that prevented testimony of Catherine Bivens from being heard and read by the

Jury on a key fact that would allow them to make an inference on a critical fact at issue in the case.  Trial Counsel did not properly preserve this issue for appellate review." (*Id.* at 51.)

Claim 11    "Defendant Rebuttal Testimony Exclusion – Not submitted for federal review." (*Id.* at 55.)

Claim 12    "Complainant's Therapist's Testimony - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the US Constitution when Trial Counsel was not able to cite authority, law and case law, properly argue, and object against the improper evidentiary rulings during the direct of the Commonwealth's expert witness, Leigh-Ann White." (*Id.* at 56.)

Claim 13    "Character Witnesses – Not submitted for federal review." (*Id.* at 59.)

Claim 14    "Multiplicitious Indictments - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel failed to notice and object to the multiplicitious indictment the Defendant was ultimately convicted on." (*Id.* at 60.)

Claim 15    "Investigation - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel failed to understand the law, prepare, submit motions, and object to the lack of investigation undertaken by the Commonwealth and acquire favorable impeaching and exculpatory evidence." (*Id.* at 63.)

Claim 16    "Search Warrant - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel did not review and challenge the truthfulness of the affidavit created in support of the search warrant issued to search Mr. Watwood's home." (*Id.* at 71.)

Claim 17    "Omitted Evidence / Lack of DNA Evidence - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel did not present defense evidence that would have shown a high probability that the Defendant did not have an opportunity to commit the crime and called into question the credibility of the Complainant." (*Id.* at 74.)

Claim 18    "Memory Expert - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial Counsel failed to consult with, utilize, and deploy a memory expert as requested by the Defendant.  The Defendant asked Trial Counsel to consult with Elizabeth Loftus and have her testify." (*Id.* at 78.)

Claim 19        "Trial Counsel Cumulative Ineffective Assistance of Counsel - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution due to the cumulative errors as presented in Habeas Grounds 1 through 18." (*Id.* at 84.)

Claim 20        "Appellate Counsel – Ineffective Assistance of Counsel - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Appellate Counsel failed to raise on appeal or properly argue trial errors affecting the Defendant's fundamental and Constitutional rights." (*Id.* at 87.)

Claim 21        "Constitutional Law Violations - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial and Appellate Counsel did not raise the lack of constitutionality of the law under which the Defendant was convicted given the actions of the Commonwealth of Virginia." (*Id.* at 91.)

## IV. General Standard for Ineffective Assistance of Counsel Claims

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance." *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

Furthermore, the United States Court of Appeals for the Fourth Circuit has admonished that, "[w]hen a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law . . . , a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law." *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012). That admonition is of particular import here. Many of Watwood's claims of ineffective assistance of counsel involve the interpretation of Virginia's laws of evidence or various Virginia statutes.

## V. Analysis

### A.   Identification - Claim 1

In Claim 1, Watwood faults his trial counsel for failing to raise various challenges to the victim's identification of him as the perpetrator of the sexual abuse.   As observed by the Supreme Court of Virginia this claim is unpersuasive:

> In a portion of claim (1), petitioner contends he was denied the effective assistance of counsel[3] because, contrary to petitioner's request, counsel did not "pursue the mistaken or fabricated identification of [petitioner] as the perpetrator." Petitioner's charges stemmed from his sexual abuse of M.B., the adopted son of petitioner's now ex-wife, Catherine Bivens. Petitioner contends he never "positively identified" him "as the perpetrator" pre-trial and, instead, that the first time M.B. identified him was during trial. However, petitioner argues, there were several purported issues with M.B.'s identification. For example, petitioner explains, (1) M.B. never described the six-inch surgical scar that runs from petitioner's naval to his penis, (2) M.B. never "reliably identif[ied]" any clothing petitioner wore, (3) M.B. "equated" the appearance of his own penis to petitioner's even though petitioner is circumcised and data compiled by the World Health Organization suggests M.B. is likely uncircumcised based on his nationality, (4) petitioner never played checkers with M.B. as M.B. claimed, and (5) it would have been "highly improbable" for petitioner to have attempted to penetrate M.B.'s anus with his penis in the manner M.B. described due to the height differences between M.B. and petitioner.   Petitioner asserts he asked counsel "to pursue the issue of mistaken identity" and that counsel's failure to do so "forc[ed] [petitioner]

---

[3] Petitioner was represented by Judson Collier and Thomas Pavlinic throughout much of his criminal proceedings. Unless specifically identified by name, they will be referred to collectively as "counsel."

to trial when he was not the perpetrator." Petitioner complains also that counsel never forced M.B. to "positively" identify petitioner "as the perpetrator . . . during pre-trial or at trial" and claims counsel should have objected to M.B.'s in-court identification of petitioner.[4]

The Court holds this portion of claim (1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner asserts no viable basis on which counsel could have challenged, either pre-trial or at trial, the admissibility of M.B.'s identification of petitioner as the person who molested him. Instead, all the purported problems petitioner identifies with M.B.'s identification would have gone to the weight, not the admissibility, of M.B.'s testimony. Further, the record, including the trial transcript, demonstrates counsel could have reasonably determined not to defend petitioner on the theory that M.B. was mistaken regarding petitioner's identity or that M.B. never adequately identified petitioner. Petitioner was accused of sexually abusing M.B. on numerous occasions over the course of several months after Bivens and her children began living in petitioner's home. M.B. testified in detail regarding how petitioner repeatedly came into his bedroom at night and sexually assaulted him. Moreover, M.B. positively identified petitioner during trial. Under such circumstances, counsel reasonably determined to defend petitioner on the theory that M.B.'s account of petitioner's abuse was incredible and that he was fabricating his allegations. Moreover, although petitioner suggests evidence or argument counsel might have presented to refute M.B.'s identification of petitioner, it is unlikely that argument or evidence would have led the jury to conclude M.B. misidentified petitioner as the criminal agent considering that M.B lived in petitioner's home. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (1), petitioner contends he was denied the effective assistance of counsel because counsel did not request an "identity evidentiary hearing," apparently to challenge or raise issues with M.B.'s identification of petitioner. Petitioner appears to assert that, had counsel requested such a hearing, it could have resulted in the dismissal of petitioner's charges.

The Court holds this portion of claim (1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland* because petitioner does not identify any authority under which counsel might have secured an "identity evidentiary hearing." As noted above, petitioner has not described any issue with M.B.'s identification of petitioner that might have resulted in the exclusion of that identification. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

---

[4] Each of petitioner's individually numbered claims ends with the assertion that, even if the error or errors described in the claim were "somehow deemed harmless, [petitioner] would still be entitled to relief because" the error or errors amounted to "a 'per se' prejudicial violation that affected [petitioner's] substantial rights." Unless otherwise specifically noted, we reject each of these assertions.

In another portion of claim (1), petitioner contends he was denied the effective assistance of counsel because counsel did not arrange a "penis/abdomen photo lineup." Petitioner appears to assert that, had counsel requested such a lineup, it could have resulted in the dismissal of petitioner's charges.

The Court holds this portion of claim (1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland* because petitioner does not identify any authority under which counsel might have sought or secured a "penis/abdomen photo lineup." Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (1), petitioner appears to contend the trial court erred in "not engag[ing] in a due process check of [M.B.'s] identification of [petitioner] and the improper conduct of the Police and Prosecution for failing to investigate."

The Court holds this portion of claim (1) is barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. *Slayton v. Parrigan*, 215 Va. 27, 29 (1974).

(ECF No. 6-1, "*State Habeas Op.*"), at 1–3 (alterations in original).

Watwood insists that his present claims are the same claims that he presented to the Supreme Court of Virginia on state habeas and that were rejected by that court. (*See, e.g.*, ECF No. 1, at 13.) The Court, however, notes the manner in which Watwood presents the supporting facts is not entirely identical. For example, in his federal habeas petition, in Claim 1, Watwood does not suggest that counsel should have challenged M.B.'s identification of him as his abuser on the ground that he never played checkers with M.B. Watwood, however, mentions the fact that he never played checkers with M.B. in his Reply Brief. (ECF No. 37, at 24–25.) Given these circumstances, the Court therefore concludes that Watwood's present claims are essentially the same claims he presented to the Supreme Court of Virginia and are governed by 28 U.S.C. § 2254(d). The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Supreme Court of Virginia's rejection of Claim 1. *See* 28 U.S.C. § 2254(d)(1)–(2).

Additionally, Watwood contends that counsel should have challenged the trial court's failure to conduct "a due process check of [M.B.'s] identification of [petitioner] and the improper conduct of the Police and Prosecution for failing to investigate." (*State Habeas Op.* at 3.) The Supreme Court of Virginia treated this aspect of Claim 1 as an independent claim of trial error and found it was defaulted under the rule in *Slayton v. Parrigan*. *State Habeas Op.* at 3. Watwood insists that this aspect of Claim 1 and his other claims that the Supreme Court of Virginia defaulted, were not independent trial error claims, but subparts of his ineffective assistance of counsel claims. (ECF No. 37, at 12–14.) Even so, Watwood fails to demonstrate that counsel performed deficiently or that he was prejudiced by the manner in which counsel did or did not challenge M.B.'s identification of him as the abuser. For example, here counsel reasonably eschewed raising a challenge that M.B. identification of him violated due process or was the product of prosecutorial misconduct. Furthermore, Watwood fails to demonstrate any reasonable possibility that such a challenge would be successful. Accordingly, Claim 1 will be DISMISSED.

**B.     Speedy Trial – Claim 2**

In Claim 2, Watwood faults counsel for failing to challenge his trial and conviction on speedy trial grounds. In rejecting this claim on state habeas, the Supreme Court of Virginia stated:

> In a portion of claim (2), petitioner contends he was denied the effective assistance of counsel because counsel did not move for dismissal of petitioner's charges based the Commonwealth's delay in bringing petitioner to trial. Petitioner accuses counsel of "failing to prepare for, understand constitutional law and State statutes, and challenge the Commonwealth's delay in prosecuting [petitioner] with proper motion practice." Petitioner explains that he was "charged and arrested" in 2015, but those charges were improperly dismissed by *nolle prosequi* in December 2015 without "good cause" because M.B. was not prepared to testify against petitioner. Thereafter, petitioner was indicted in November 2016. Based on his contention that his first set of charges was improperly dismissed, petitioner calculates he was brought to trial within twenty months of his being charged, thus violating his statutory speedy trial right under Code § 19.2-243. In the alternative, petitioner posits that, even if his first set of charges was properly dismissed, he was

not tried until ten months after his 2016 indictments, which also violated Code § 19.2-243.

Petitioner claims counsel should have also argued a violation of petitioner's constitutional speedy trial right. Petitioner alleges the Commonwealth used the delay between the dismissal of his first set of charges and his 2016 indictments to gain a "tactical advantage" and subject M.B. "to new information, post-disclosure experiences, confidence boosting feedback, and leading questions from a biased unqualified therapist using suggestive non-sanctioned, non-industry standard sexual abuse therapy." Petitioner is referring to therapy M.B. received while under the care of Leigh-Anne White. As he asserted during his trial, petitioner believes White improperly treated M.B. by using a workbook entitled "Cory Helps Kids Cope With Sexual Abuse," despite that the workbook cautions that it should not be used "unless the sexual abuse has been investigated by child protective services and/or law enforcement and the abuse has been verified." Petitioner complains also that the Commonwealth did not record M.B.'s therapy sessions for "evaluation of taint" by the defense nor did Child Protective Services ("CPS") investigate M.B.'s allegations in the time between the dismissal of petitioner's first set of charges and his indictments.

Petitioner contends that, based on these events, counsel should have moved to dismiss petitioner's charges or moved for an inquiry pursuant to *Barker v. Wingo*, 407 U.S. 514 (1972), because, "[i]n sum, these actions violated [petitioner's] liberty interest and constitutional rights under the Due Process Clause of the Fifth Amendment and Speedy Trial right of the Sixth Amendment." Petitioner adds that, due to counsel's neglect, he

> had his employment with a state agency disrupted, his financial resources drained, his associations curtailed, and was subject to public news and associated harassment which created extreme anxiety in him, his family, and his friends who all knew he was innocent. [He] was damned by clandestine innuendo, especially at work, and was not given the chance to promptly defend himself. With no corroborating evidence, incredible Complainant testimony, suppression of evidence by the Prosecution and Court, [petitioner] was forced into a trial facing a coached, coerced, and mentally compromised Complainant supported by a confirmation biased Prosecution and Court.

The Court holds this portion of claim (2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. First, to the extent petitioner contends counsel should have asserted a violation of his statutory speedy trial right under Code § 19.2-243, petitioner fails to demonstrate counsel neglected a potentially meritorious argument. Contrary to petitioner's suggestion, his initial charges never triggered the running of his statutory speedy trial period. The record, including the manuscript record from petitioner's criminal proceedings and the trial transcript, demonstrates that, on October 1, 2015, petitioner was arrested on nine warrants accusing him of sexually abusing M.B. However, in December 2015, those arrest warrants were dismissed by nolle prosequi prior to a preliminary hearing. According to petitioner's counsel, the Commonwealth

explained its decision to dismiss the warrants with only that M.B. was "not ready to testify." Accordingly, because petitioner never had a preliminary hearing following his initial arrest, counsel could have reasonably determined that his statutory speedy trial period did not begin to run until petitioner was indicted in November 2016. *See* Code § 19.2-243 (explaining that the speedy trial period runs from the time "[w]here a district court has found that there is probable cause to believe that an adult has committed a felony" or, "[i]f there was no preliminary hearing in the district court, or if such preliminary hearing was waived by the accused," the period runs from "the date an indictment or presentments found against the accused"); *see also Hudson v. Commonwealth*, 267 Va. 36, 41 (2004) (the speedy trial statute "focuses strictly on the length of time that has passed from the date of the defendant's preliminary hearing in the district court or, if there was no preliminary hearing, from the date of indictment or presentment in the circuit court").

Further, counsel could have reasonably determined not to claim a statutory speedy trial violation based on the delay between petitioner's November 2016 indictment and the start of petitioner's trial just over seven months later in June 2017. Petitioner was released on bond shortly after he was indicted and remained released pending his trial. Accordingly, and considering that counsel repeatedly pressed for a later trial date, counsel could have reasonably determined that petitioner was tried within the requisite nine months of his indictments. Code § 19.2-243.

Similarly, counsel could have reasonably determined not to argue a violation of petitioner's constitutional speedy trial right. Whether the delay between when a defendant is "accused" of a crime and when he goes to trial violates his Sixth Amendment right to a speedy trial turns primarily on the consideration of four factors, the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Fowlkes v. Commonwealth*, 218 Va. 763, 766 (1978) (internal quotation marks omitted). Petitioner appears to assert that counsel should have premised a speedy trial claim predominantly on the fact that the Commonwealth dismissed petitioner's initial arrest warrants and then delayed in indicting petitioner for approximately one year, during which time M.B. became prepared to testify against petitioner.

However, petitioner has failed to adequately describe a factual scenario in which counsel should have suspected that the delay between the dismissal of petitioner's arrest warrants and his indictments should count against the Commonwealth for speedy trial purposes. It is well established that "[t]he Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges." *United States v. MacDonald*, 456 U.S. 1, 7 (1982); *see also Lott v. Trammell*, 105 F.3d 1167, 1175 (10th Cir. 2013) (undertaking speedy trial analysis and rejecting claim that prosecution did not act in good faith when dismissing an original set of charges and then refiling them). Although petitioner intimates that the Commonwealth did not act in good faith when it dismissed his initial charges, he proffers no evidence counsel could have used to support such an assertion, save for the fact that M.B. underwent therapy and was eventually able testify. For example, petitioner does not dispute that M.B. was unable to testify against him

when the Commonwealth dismissed his arrest warrants, nor does petitioner suggest that circumstance was due to any fault of the Commonwealth. Further, petitioner identifies no evidence to support his vague assertion that, after dismissing his arrest warrants, the Commonwealth endeavored to rehabilitate M.B. and manufacture false testimony against petitioner. Although petitioner correctly notes that M.B. underwent additional therapy during which he spoke further about petitioner's abuse, petitioner does not demonstrate that therapy was at the Commonwealth's behest or that the Commonwealth was in any way involved with M.B.'s continued treatment.

Accordingly, petitioner fails to demonstrate counsel should have appreciated a plausible argument that the dismissal of his arrest warrants was in "bad faith" such that the time between that dismissal and petitioner's subsequent indictments should be attributed to the Commonwealth for speedy trial purposes. *See United States v. Ashford*, 924 F.2d 1416, 1419 (7th Cir. 1991) (no speedy trial concern raised by four-year delay between dismissal of a criminal complaint and eventual indictment). Absent that time period, counsel could have reasonably determined that the approximately seven months it took to bring petitioner to trial following his indictment did not raise constitutional speedy trial concerns, especially considering that counsel repeatedly requested a later trial date so they could adequately prepare petitioner's defense.[5] *See United States v. Chahia*, 544 F.3d 890, 899 (8th Cir. 2008) (delay of approximately seven months is not presumptively prejudicial for speedy trial purposes); *Wells v. Petsock*, 941 F.2d 253, 257 & n.3 (1991) (collecting cases and stating that "[a] pretrial incarceration of seven months . . . does not by itself compel a finding that the petitioner was deprived of his right to a speedy trial"). Moreover, for all the reasons discussed above, petitioner fails to demonstrate that, had counsel asserted a violation of petitioner's speedy trial rights, petitioner may have escaped trial for any of his

---

[5] Petitioner takes no issue with the advisability of those requests. Further, although claim (2) includes an oblique reference to petitioner's unspecified right" under the Due Process Clause of the Fifth Amendment," the claim is labeled "Speedy Trial," and we do not read it to fairly assert that counsel was ineffective for failing to contend that any pre-indictment delay violated petitioner's due process, as opposed to his speedy trial, rights. *See United States v. DeCologero*, 530 F.3d 36, 78 (1st Cir. 2008) ("Pre-indictment delay does not implicate the Sixth Amendment's Speedy Trial provision, but the Supreme Court has acknowledged that the Due Process Clause of the Fifth Amendment has a limited role to play in protecting against oppressive pre-indictment delay.") (internal quotation marks and brackets omitted). In any event, for much the same reasons counsel could have reasonably determined not to argue the delay between the dismissal of petitioner's arrest warrants and his subsequent indictments raised Sixth Amendment speedy trial concerns, counsel could have also reasonably determined that any pre-indictment delay did not violate petitioner's due process rights. *See id.* ("To rise to the level of a due process violation . . . , the [pre-indictment] delay (1) must have caused substantial prejudice to defendant's rights to a fair trial and (2) was an intentional device used by the prosecution to gain tactical advantage over the accused.") (internal quotation marks omitted).

charges.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (2), petitioner appears to contend he was denied the effective assistance of counsel because, following the dismissal of petitioner's initial arrest warrants, counsel did not "motion to make sure any future interactions that [M.B.] had with the Commonwealth or its agents were video recorded."

The Court holds this portion of claim (2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland* because petitioner does not identify any authority under which counsel might have compelled the Commonwealth or its agents to record their interactions with M.B. Further, petitioner does not specify or attempt to explain how any such recordings would have affected the jury's verdict or any other aspect of petitioner's case. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (2), petitioner appears to contend he was denied the effective assistance of counsel because counsel "did not submit a motion or request a competency hearing" after the Commonwealth dismissed petitioner's arrest warrants because M.B. was "not ready."  The Court holds this portion of claim (2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland* because, first, petitioner identifies no authority under which counsel might have challenged M.B.'s competency to testify after the Commonwealth dismissed petitioner's arrest warrants but before the Commonwealth indicted petitioner.  Further, petitioner describes no facts suggesting that counsel might have successfully challenged M.B.'s competency to testify after petitioner was indicted.  To be competent to testify, a child must "possesses the capacity to observe, recollect, communicate events, and intelligently frame answers to the questions asked of him or her with a consciousness of a duty to speak the truth."  *Greenway v. Commonwealth*, 254 Va. 147, 153 (1997).  The record, including the trial transcript, demonstrates the court examined M.B.'s competency prior to his testifying against petitioner and found M.B. competent. Petitioner has not alleged or attempted to explain what more counsel might have done to demonstrate M.B. was not competent to testify.  Although petitioner asserts M.B.'s testimony was "coached" and "coerced" and that M.B. was "mentally compromised," petitioner does not explain how counsel could have demonstrated as much in a manner that might have indicated M.B. was incompetent to testify.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

. . . .

In another portion of claim (2) and in a portion of claim (3), petitioner appears to contend he was the victim of police and prosecutorial misconduct because the Commonwealth did not record its interactions with M.B. following the dismissal of petitioner's arrest warrants.  Petitioner contends that, as a result, he was denied "exculpatory and impeaching evidence."

> The Court holds these claims are barred because these non-jurisdictional issues could have been raised at trial and on direct appeal and, thus, are not cognizable in a petition for a writ of habeas corpus. *Slayton*, 215 Va. at 29.

*State Habeas Op.* at 4–9 (alterations in original). The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Supreme Court of Virginia's dismissal of Claim 2. *See* 28 U.S.C. § 2254 (d)(1)–(2).[6]

Furthermore, with respect to those portions of Claims 2 and 3 that the Supreme Court of Virginia dismissed as defaulted, Watwood fails to demonstrate deficiency by counsel or resulting prejudice.[7] Watwood had no right to have the police or prosecution record all of their interactions with M.B. Accordingly, Claim 2 will be DISMISSED.

### C.   Incompetent Evidence Admission

In Claim 3, Watwood faults counsel for failing to effectively challenge's M.B.'s testimony. In dismissing this claim, the Supreme Court of Virginia stated:

> In another portion of claim (3), petitioner contends he was denied the effective assistance of counsel because counsel failed to "analyze available evidence, prepare, argue (backed by case law), file a motion for an evidentiary hearing, and object when required to the presentment of [M.B.'s] perjured, tainted, and incompetent allegations, and the subsequent admission of [M.B.'s] Trial testimony by the Court." Petitioner appears to contend counsel should have objected to the admissibility of M.B.'s testimony because his "initially disclosed allegations . . . were inherently incredible." Petitioner suggests further that, when aspects of M.B.'s statements during an interview at a Georgia child advocacy center ("CAC") are compared with subsequent statements he made during therapy and at trial, it is

---

[6] On federal habeas, Watwood insists his speedy trial rights were violated because he "was still under arrest after a void ab initio nolle prosequi order was garnered from the Juvenile and Domestic Relations ('JDR') Court after the prosecution's constructive fraud upon the Court." (ECF No. 37, at 27.) As found by the Supreme Court of Virginia, however, Watwood fails to demonstrate counsel had evidence to demonstrate that the nolle prosequi of the initial charges was improper or done in bad faith.

[7] As noted previously, Watwood contends that the portions of his claims that the Supreme Court of Virginia found to be defaulted were not independent claims of trial error, but subparts of his ineffective assistance of counsel claims. Throughout this opinion the Court therefore explains why counsel was not deficient and why Watwood was not prejudiced by counsel's failure to pursue these nominally defaulted claims of trial error.

clear he did not have "personal knowledge" of the relevant events. Petitioner provides a table in which he details at length the purported inconsistencies in M.B.'s statements at the CAC, during therapy, and during petitioner's trial proceedings. Further, petitioner asserts M.B. "admitted in [c]ourt that he fabricated his therapy narrative" and, as evidence of such, points to a portion of M.B.'s trial testimony in which he explains that, while he was in therapy, he created a narrative of petitioner's abuse. M.B. explains that the narrative did not "include everything true," "left a lot of things out," and "included a few extra things." Finally, petitioner contends that, because M.B. lived in an orphanage until he was approximately two years old, he "is neurologically and psychologically compromised leading to moral incapacity due to early life institutional deprivation." As evidence of such, petitioner identifies Elizabeth Loftus as a potential expert witness on psychology and human memory and provides an extensive list of scholarly articles pertaining to brain development, behavior, emotion, psychopathology, and other topics. Petitioner asserts he was entitled to resolve the purported issues with the reliability of M.B.'s testimony prior to trial and that counsel should have "trigger[ed] a pre-trial taint hearing to assess [M.B.'s] . . . proffered . . . testimony and the therapeutic process," by which petitioner appears to mean the allegedly suggestive and unsanctioned therapy M.B. received prior to petitioner's trial.

The Court holds this portion of claim (3) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland because petitioner has not sufficiently identified a basis upon which counsel might have successfully sought, either before or at trial, to exclude M.B.'s testimony. Counsel could have reasonably determined that all the potential issues petitioner identifies regarding M.B.'s credibility bear on the weight of his testimony, not its admissibility, and petitioner cites no authority to the contrary. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (3), petitioner appears to contend he was denied the effective assistance of counsel because counsel did not object to the admissibility of M.B.'s testimony based on the (1) Commonwealth's failure to "conduct a post-therapy interview to determine the impact of suggestiveness on the reliability of [M.B.'s] testimony," (2) the trial court's failing to "conduct a reliability hearing of the pre-trial evidence as required by Virginia Statute 19.2-268.3(A)," and (3) the Commonwealth's not ensuring that M.B.'s accusations of abuse were subject to investigation by CPS, which petitioner contends was required by Code §§ 63.2-1507 and 63.2-1509.

The Court holds this portion of claim (3) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland* because petitioner does not identify a basis on which counsel could have excluded M.B.'s testimony. Petitioner fails to cite any authority that required the Commonwealth to interview M.B. to determine what effect, if any, his therapy had on the reliability of his testimony. Further, provided several conditions are met, Code § 19.2-268.3 creates an exception to the hearsay rule for out-of-court statements made by child victims of certain crimes. Therefore, the statute has no bearing on the admissibility

of a child's live testimony, like that which M.B. offered at petitioner's trial. Similarly, petitioner identifies no portion of the statutes pertaining to investigations of abuse by CPS that indicates exclusion of a victim's testimony results if such an investigation is not performed. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (3), petitioner appears to contend he was the victim of prosecutorial misconduct because the Commonwealth did not conduct a "post-therapy interview" with M.B. "to determine the impact of suggestiveness on the reliability of [his] testimony' and, instead, allowed a mentally unstable M.B. to offer contradictory and perjured testimony at trial. Petitioner asserts M.B. received eighteen months of "non-sanctioned, non-industry standard suggestive therapy" prior to petitioner's trial and that the Commonwealth was aware of significant changes in M.B.'s account of the relevant events.

In another portion of claim (3), petitioner contends the trial court erred in not analyzing "contradictions" in M.B.'s trial testimony, statements while in therapy, and statements to the CAC before denying petitioner's motion to set aside the verdict.

The Court holds these claims are barred because these non-jurisdictional issues could have been raised at trial and on direct appeal or were raised and decided in those venues and, thus, are not cognizable in a petition for a writ of habeas corpus. *Henry v. Warden*, 265 Va. 246, 249 (2003); *Slayton*, 215 Va. at 29.

*State Habeas Op.* at 9–11 (alterations in original).

The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Supreme Court of Virginia's dismissal of Claim 3. *See* 28 U.S.C. § 2254(d)(1)–(2). Furthermore, Watwood has failed to demonstrate ineffective assistance of counsel with respect to those aspects of Claim 3 that the Supreme Court of Virginia found procedurally defaulted. Watwood fails to demonstrate that counsel acted deficiently by failing to pursue the claims of prosecutorial misconduct or trial error that he urges here. Accordingly, Claim 3 will be DISMISSED.

### D.   Hearsay Evidence Admission

In Claim 4, Watwood contends that counsel performed deficiently with respect to the admission of hearsay evidence. In denying this claim, the Supreme Court of Virginia stated:

In a portion of claim (4), petitioner contends he was denied the effective assistance of counsel because counsel "failed to know the law and object to the admission of hearsay evidence without the prerequisite hearing taking place . . . . [and] failed to preserve this issue for appellate review." Petitioner explains that counsel did not object to the admission of "[h]earsay evidence in the form of the full videotape of the CAC interview [that] was improperly introduced into evidence during a pre-trial closed-circuit hearing." Petitioner contends the admission of the video was improper because the court never ruled "on the freshness of the complaint," did not rule on a "Motion to Admit Statements of Child Victim," did not hold a hearing required by Code § 19.2-268.3 and did not require M.B. to testify. As a result, petitioner asserts, the video of M.B.'s interview with the CAC was admitted "without the prerequisite requirements" and this "fundamental defect . . . rendered any subsequent evidence admissibility and witness competency decisions by the Court unreliable," thus violating petitioner's right to confront his accuser and his due process rights. Petitioner asserts counsel's failure to recognize and object to these violations of his rights "damaged the framework and integrity of [petitioner's] proceedings."

The Court holds this portion of claim (4) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the manuscript record from petitioner's criminal proceedings, the transcript of an April 5, 2017 pre-trial hearing, and the transcript of petitioner's trial, demonstrates that, pre-trial, the Commonwealth sought a ruling on the admissibility of pre-trial statements M.B. made regarding petitioner's abuse, including the video recorded statement M.B. made at the CAC. The Commonwealth sought to have the video admitted under the exception Code § 19.2-268.3 creates for the exclusion of hearsay. *See* Code § 19.2-268.3 (providing that, if certain conditions are met, "[a]n out-of-court statement made by a child who is under 13 years of age at the time of trial or hearing who is the alleged victim of an offense against children describing any act directed against the child relating to such alleged offense shall not be excluded as hearsay"). The trial court held a hearing on that motion, where the video was played for the court, and the court ultimately ruled the video was not admissible under Code § 19.2-268.3. Accordingly, to the extent petitioner contends counsel should have performed differently at the pre-trial hearing regarding the video's admissibility, petitioner has failed to identify how counsel might have been more effective or how the outcome of that hearing negatively affected the result of petitioner's eventual trial.

Further, although the video of M.B.'s CAC interview was introduced at petitioner's trial, it was only for the limited purpose of serving as a prior consistent or inconsistent statement by M.B. and not for the truth of the matters assert therein. Counsel obtained an appropriate limiting instruction, and petitioner does not specify how counsel might have performed differently at trial. Nor has petitioner alleged or attempted to explain how, had the video not been admitted at his trial, the jury might have reached a different verdict. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

>     In portions of claims (2), (3), (4), (5), (15), and (17), petitioner contends he
> was the victim of trial court error and police and prosecutorial misconduct because
> M.B. was not subject to an investigation by CPS under Code §§ 63.2-1507 and
> 63.2-1509 or a "psychological, psychiatric and physical" examination under Code
> § 63.2-1524. Petitioner asserts the failure to conduct these investigations denied
> him "exculpatory and impeaching evidence."
>     In portions of claims (3), (4), and (5), petitioner appears to contend the trial
> court erred in admitting the videotape of M.B.'s CAC interview at a pre-trial
> hearing without "conducting a reliability hearing . . . as required by Virginia Statute
> 19.2-268.3(A)."
>     The Court holds these claims are barred because these non-jurisdictional
> issues could have been raised at trial and on direct appeal and, thus, are not
> cognizable in a petition for a writ of habeas corpus. *Slayton*, 215 Va. at 29.

*State Habeas Op.* at 11–13 (alterations in original). Watwood fails to demonstrate that the Supreme Court of Virginia's rejection of Claim 4 involved an unreasonable determination of law or facts. Furthermore, Watwood fails to demonstrate that counsel performed deficiently by failing to raise the issues that the Supreme Court of Virginia concluded were defaulted. Accordingly, Claim 4 will be DISMISSED.

**E.     M.B.'s Competency**

In Claim 5, Watwood complains that counsel performed deficiently with respect to raising issues related to M.B.'s competency. The Supreme Court of Virginia rejected this claim and stated:

>     In a portion of claim (5), petitioner contends he was denied the effective
> assistance of counsel because counsel did not challenge M.B.'s competency to
> testify through "preparation, judicial notice, motions, expert testimony,
> competency hearing, and voir dire" or "properly preserve the error for appellate
> review." Petitioner explains that, although the Commonwealth suppressed M.B.'s
> "mental health records," he is "psychologically and neurologically compromised
> with deficits in memory, behavior, emotion, resulting in significant
> psychopathology leading to moral incapacity due to early life institutional
> deprivation." As evidence of such, petitioner again identifies Loftus as a potential
> expert witness on psychology and human memory and provides an extensive list of
> scholarly articles pertaining to brain development, behavior, emotion,
> psychopathology, and other topics. Petitioner asserts also that M.B. had a
> "conversion mental breakdown" prior to petitioner's being indicted that was not
> due to petitioner's sexually abusing him. Further, petitioner contends "[t]he
> Commonwealth experts did not have the skills or experience to diagnose and treat
> [M.B.'s] early life institutional deprivation" and M.B. "was having memory issues

23

and was subjected to mind-altering drugs." Petitioner complains also that neither the Commonwealth nor the circuit court ensured that M.B. was subject to a CPS investigation or an evaluation under Code § 63.2-1524 to help determine his "reliability and competency" nor did the court hold a hearing under Code § 19.2-268.3(A). Petitioner complains the court also failed to review M.B.'s "mental health records 'in camera'" and "conducted an inadequate competency determination using questions that were recognition tasks that do nothing to determine a child's competency or moral incapacity." Further, petitioner accuses counsel of "fail[ing] to work with [petitioner's] expert witnesses to build a line of questioning that would bring facts into evidence that would allow [petitioner's] experts to properly render their opinion," "fail[ing] to elicit facts into evidence by questioning the Commonwealth's expert witness that would allow [petitioner's] experts to properly render their opinion," "fail[ing] to submit a motion requesting an independent psychological evaluation of [M.B.] as allowed under Virginia Statute § 3.2-1524," and "fail[ing] to present to the [c]ourt an affidavit by Dr. [Leigh] Hagan for consideration on whether or not there was some discovery issue ([M.B.'s] competency) that needed to come forward in the case." Petitioner elaborates that counsel had Drs. Hagan and Robert S. Marvin at their disposal to "help the Court and the Jury understand that [M.B] had severe psychological issues" but that counsel "failed to listen to and work with these experts, . . . failed to schedule these expert witnesses to appear at motion hearings and trial . . . ., [and] failed to meet with Dr. Marvin (a specialist who works with families who have children with histories of disrupted early relationships and focuses on assessing and intervening with families of foster and adopted children), until two days before trial." As a result, petitioner complains, counsel did not have Dr. Marvin testify at trial and Dr. Hagan missed hearing M.B.'s trial testimony. Petitioner asserts that "[t]he inattention, neglect, lack of preparation, knowledge, and skill by . . . [c]ounsel allowed the improper conduct of the Commonwealth to impair [petitioner's] rights and affect the framework and harm the integrity of [petitioner's] proceedings by allowing an incompetent witness to take the stand and testify."

The Court holds this portion of claim (5) fails to satisfy the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the manuscript record from petitioner's criminal proceedings and transcripts of petitioner's pre-trial and trial proceedings, demonstrates the issue of M.B.'s mental health and the therapy and other treatment he underwent in the years leading up to petitioner's trial was the subject of counsel's intense focus. Although petitioner suggests counsel's efforts were ineffectual or incomplete for numerous reasons, petitioner fails to proffer evidence suggesting that any of counsel's alleged shortcomings resulted in counsel neglecting evidence that would have borne on, much less potentially altered, the trial court's conclusion that M.B. was competent to testify, *i.e.*, that he could "observe, recollect, communicate events, and intelligently frame answers to the questions asked of him . . . with a consciousness of a duty to speak the truth." *Greenway*, 254 Va. at 153.

For example, although petitioner claims M.B. was "psychologically and neurologically compromised with deficits in memory, behavior, emotion, resulting

in significant psychopathology leading to moral incapacity due to early life institutional deprivation," he identifies no expert who has or would have opined as much. Instead, petitioner simply (1) identifies that M.B. was adopted from an orphanage and subject to mental health treatment, (2) lists purportedly relevant scholarly articles, and (3) names Loftus as a potentially helpful expert. Although petitioner asserts M.B. had a "conversion mental breakdown," he does not explain how such a breakdown undermines M.B.'s competence to testify nor does he identify any expert who might have opined on that subject. *See Vandross v. Stirling*, 986 F.3d 442, 452 (4th Cir. 2021) ("When a petitioner's ineffective assistance of counsel claim rests on trial counsel's failure to call particular witnesses, expert or otherwise, we require a specific proffer as to what an expert witness would have testified.") (internal quotation marks and ellipsis omitted).

Further, although petitioner contends M.B. "was having memory issues and was subjected to mind-altering drugs," the only evidence he cites to support those assertions includes excerpts from the trial transcript in which one of the counselors who treated M.B., White, stated M.B. was taking unspecified medication and that he was having "memory issues," specifically, that he was experiencing "extreme symptoms or kind of a flashback" when he would recall petitioner's abuse. White clarified that M.B. was not having "memory problems." Accordingly, White's testimony does not bear the weight of petitioner's vague assertions regarding potential issues with M.B.'s memory or perception. Likewise, to the extent petitioner contends counsel should have insisted on (1) a CPS investigation into M.B.'s allegations, (2) that M.B. be subject to a psychological, psychiatric, or physical examination pursuant to Code § 63.2-1524 or (3) that the court hold a hearing under Code § 19.2-268.3, petitioner does not specify what beneficial information bearing on M.B.'s competency counsel might have obtained as a result.

To the extent petitioner contends counsel should have pressured the court to review M.B.'s "mental health records 'in camera'" or question M.B. differently regarding his competency to testify, petitioner has not described what M.B.'s mental health records would have shown that would have been relevant to his competency, has not proffered what additional questions M.B. should have been asked, or ventured what M.B.'s answers might have been. Finally, although petitioner accuses counsel of neglecting or misusing their experts in numerous ways, petitioner does not allege or attempt to explain how that neglect or misuse deprived counsel of information or evidence relevant to the issue of M.B.'s competency to testify. *Cf. Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced"). Thus, petitioner has failed to demonstrate that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (5), petitioner appears to contend he was the victim of prosecutorial misconduct because the Commonwealth "suppressed the mental health records of [M.B.]" and did not produce them upon petitioner's request.

In another portion of claim (5), petitioner appears to contend that, for several reasons, neither the trial court nor the Commonwealth appropriately reviewed or determined M.B.'s competency to testify.

The Court holds these claims are barred because these non-jurisdictional issues could have been raised at trial and on direct appeal or were raised and decided in those venues and, thus, are not cognizable in a petition for a writ of habeas corpus. *Henry*, 265 Va. at 249; *Slayton*, 215 Va. at 29.

*State Habeas Op.* at 13–16 (alterations in original). The Supreme Court of Virginia's rejection of Claim 5 was reasonable. Furthermore, Watwood fails to demonstrate that counsel performed deficiently with respect to the issues the Supreme Court of Virginia found to be defaulted. Specifically, Watwood has not demonstrated that counsel failed to pursue any viable issue with respect to allegedly suppressed mental health records or M.B.'s competency. Accordingly, Claim 5 will be DISMISSED.

### F.    M.B.'s Records

In Claim 6, Watwood contends that counsel performed deficiently with respect to obtaining M.B.'s mental health records. When the Supreme Court of Virginia rejected this claim, it stated:

In claim (6), petitioner contends he was denied the effective assistance of counsel because counsel "failed to recognize, prepare, object, present case law, and argue points of law and constitutional issues in response to the actions of the Prosecution and Court that denied [petitioner] access to . . . motive, impeachment, competency, therapy process, credibility and exculpatory evidence from [M.B.'s] mental health records." Petitioner again claims that M.B. is "is neurologically damaged with deficits in memory, behavior, emotion, and significant psychopathy resulting in moral incapacity due to early age institutional deprivation." The only evidence petitioner identifies to support this assertion is Bivens' acknowledgment at trial that she adopted M.B. from a Chinese orphanage when he was just over two years old. Petitioner continues that the Commonwealth did not obtain M.B.'s "mental health records . . . generated by experts" upon whom the Commonwealth relied nor did the Commonwealth "turn over any exculpatory and impeaching evidence." Instead, petitioner asserts, the "expert witness" provided "selected records" to Bivens, who in turn provided what she deemed relevant and material to the Commonwealth. Although petitioner acknowledges that counsel attempted unsuccessfully to subpoena "all [M.B.'s] records" and raised "plausible" arguments supporting the issuance of those subpoenas, petitioner contends counsel should have objected to the Commonwealth's assertion that "'impeachment evidence was not subject to discovery'" and its assertion that "it was not in possession of exculpatory and impeaching evidence because it was not required to acquire and review the evidence." Petitioner argues "[c]ounsel exhibited a lack of preparation, legal knowledge, skill, and attention in attempting to acquire the mental health

records of [M.B.]." Petitioner also accuses counsel of "fail[ing] to create and submit a detailed motion for discovery for the Court to consider when the Prosecution refused the records request" and for failing to "cite legal authority." As a result, petitioner asserts, counsel was unable to prevent the Commonwealth and the trial court from unethically and unconstitutionally denying petitioner access to M.B.'s "mental health records." This in turn "allowed for a breakdown in the adversarial process," "skewed the accuracy of the truth determining process that ultimately rendered the Trial results unreliable," "trampled" petitioner's "right to prepare for trial," and compromised "the integrity of the framework underpinning the proceedings."

      The Court holds this portion of claim (6) fails to satisfy the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the manuscript record from petitioner's criminal proceedings, the transcripts of pre-trial hearings, and the transcript of petitioner's trial, demonstrates counsel endeavored at length to subpoena M.B.'s mental health, education, and medical records and was only partially successful in obtaining those records. Although petitioner contends counsel's efforts were lacking in numerous respects, he does not identify any record counsel might have obtained nor does he specify how any such record would have benefitted his defense. Further, to the extent petitioner suggests counsel should have claimed prosecutorial misconduct based on the Commonwealth's failure to provide M.B.'s records, petitioner has not specified the substance of any record that was withheld. Thus, petitioner has failed to demonstrate that, but for counsel's alleged error, the result of the proceeding would have been different.

      In another portion of claim (6), petitioner appears to contend the trial court erred in quashing petitioner's subpoena that sought production of M.B.'s records.

      In another portion of claim (6), petitioner appears to contend he was victim of prosecutorial misconduct because the Commonwealth failed to obtain and produce M.B.'s "exculpatory and impeaching" records despite petitioner's request for those records.

      The Court holds these claims are barred because these non-jurisdictional issues could have been raised at trial and on direct appeal or were raised and decided in those venues and, thus, are not cognizable in a petition for a writ of habeas corpus. *See Henry*, 265 Va. at 249; *Slayton*, 215 Va. at 29.

*State Habeas Op.* at 16–18 (alterations in original). The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Supreme Court of Virginia's dismissal of Claim 6 for lack of prejudice. *See* 28 U.S.C. § 2254(d)(1)–(2). Furthermore, the Court finds that Watwood fails to demonstrate that counsel performed deficiently in their effort to obtain M.B.'s mental health records. In this regard, Watwood fails to demonstrate that counsel could have successfully challenged the trial court's decision to quash his subpoena or

prevailed on any claim that the prosecution engaged in misconduct by failing to obtain M.B.'s

records. Accordingly, Claim 6 will be DISMISSED.

### G.   Denial of Expert Witnesses

In Claim 7, Watwood contends that counsel performed deficiently with respect to

compelling the attendance of M.B.'s mental health professionals. In denying this claim, the

Supreme Court of Virginia stated:

> In a portion of claim (7), petitioner contends he was denied the effective
> assistance of counsel when counsel "failed to prepare, argue with case law, and
> object to the Court's ruling denying the in-court testimony of the mental health
> professionals who created the records of [M.B.] . . . . [and] [c]ounsel did not
> properly preserve the issue for appellate review." Petitioner complains that the trial
> court quashed subpoenas pertaining to "Dr. Khan" and Dr. Mary Webster but that
> it was critical for the jury to hear testimony from those witnesses because they
> treated M.B., because Dr. Webster authored an affidavit in which she claimed she
> never heard M.B. complain of sexual abuse, and because Dr. Kahn prescribed
> medication to M.B. but later lost his license to practice. Petitioner complains that
> counsel's lack of "knowledge of the law and preparation . . . impaired [petitioner's]
> rights and denied [petitioner] access to and presentation of exculpatory and
> impeaching evidence." This "resulted in a breakdown of the adversarial process
> and skewed the accuracy of the truth determining process that rendered the Trial
> results unreliable," and petitioner was "denied due process and a fair trial by being
> prevented from mounting a meaningful, complete defense."
>
> The Court holds this portion of claim (7) satisfies neither the "performance"
> nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record,
> including the manuscript record from petitioner's criminal proceedings, the
> transcripts of pre-trial hearings, and the transcript of petitioner's trial, demonstrates
> counsel endeavored at length to subpoena M.B.'s mental health, education, and
> medical records and was only partially successful in obtaining those records.
> Counsel's efforts included attempting to secure records from Drs. Khan and
> Webster. Petitioner's vague, non-specific contentions that counsel could have done
> more in this regard fail to establish counsel's efforts fell below an objective
> standard of reasonableness. Further, petitioner has not attempted to explain why
> testimony from Drs. Khan or Webster might have altered the jury's verdict. Thus,
> petitioner has failed to demonstrate that counsel's performance was deficient or that
> there is a reasonable probability that, but for counsel's alleged error, the result of
> the proceeding would have been different.
>
> In another portion of claim (7), petitioner appears to contend the trial court
> erred in denying him the ability to call Drs. Webster and Kahn as witnesses.
>
> The Court holds these claims are barred because these non-jurisdictional
> issues could have been raised at trial and on direct appeal or were raised and decided

in those venues and, thus, are not cognizable in a petition for a writ of habeas corpus. *Henry*, 265 Va. at 249; *Slayton*, 215 Va. at 29.

*State Habeas Op.* at 18–19 (alterations in original). The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Supreme Court of Virginia's dismissal of Claim 7 for failure to demonstrate deficiency or prejudice. *See* 28 U.S.C. § 2254(d)(1)–(2). Furthermore, Watwood fails to demonstrate that counsel performed deficiently with respect to pursuing challenges regarding Drs. Webster and Khan or that he was prejudiced. Accordingly, Claim 7 will be DISMISSED.

### H.   Jury Venire

In Claim 8, Watwood challenges counsel's performance with the selection of the jury. In rejecting this claim for failure to demonstrate deficiency or prejudice, the Supreme Court of Virginia stated:

> In a portion of claim (8), petitioner contends he was denied the effective assistance of counsel because counsel did not object to the proportion of men to women in petitioner's venire or the proportion of men to women on petitioner's resulting jury. Petitioner explains that his "venire was only 20% male as opposed to 48.2% male reflecting the population in Chesterfield County per the census" and that his resulting jury included ten women and only two men. Petitioner adds that one male juror was dismissed during trial due to illness, resulting in a jury with eleven women and one man. Petitioner asserts counsel's "lack of knowledge and failure to challenge the jury selection process . . . allowed for [p]rosecutorial misconduct to trample upon [petitioner's] rights and compromised [petitioner's] right to a fair trial."
>
> The Court holds this portion of claim (8) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland* because petitioner fails to allege facts indicating counsel unreasonably neglected a potentially meritorious objection to the composition of petitioner's venire. Petitioner had a "Sixth Amendment right to an impartial jury drawn from a fair cross section of the community." *Prieto v. Commonwealth*, 283 Va. 149, 186 (2012). To demonstrate a violation of that right based on the composition of petitioner's venire, counsel would have had to establish that men were "not fairly and reasonably represented in [Chesterfield County's] jury venires" and that "systematic exclusion in the jury selection process account[ed] for the underrepresentation." *Id.* (internal quotation marks omitted). Standing alone, the fact that men were purportedly underrepresented on petitioner's venire would not

have supported a claim that the process by which that venire was selected was unconstitutional. *See Ambrose v. Booker*, 684 F.3d 638, 645 (6th Cir. 2012) ("A petitioner raising this claim is challenging the pool from which the jury is drawn, and not necessarily the venire panel directly before him. Accordingly, the composition of one panel does not indicate whether a fair cross-section claim exists."); *United States v. Hill*, 197 F.3d 436, 445 (10th Cir. 1999) ("This circuit and others have repeatedly emphasized that . . . evidence of a discrepancy on a single venire panel . . . is insufficient to demonstrate systematic exclusion."). Further, to the extent petitioner contends counsel should have objected to the composition of petitioner's jury based on the proportion of men to women, petitioner had no constitutional right to a jury that reflected a fair cross section of his community or included a certain number of men. *See Holland v. Illinois*, 493 U.S. 474, 482–83 (1990) (although the Sixth Amendment requires that a defendant's jury be drawn from a "fair cross-section of the community," a defendant has no Sixth Amendment right to a petit jury representing a fair cross-section of the community); *Marshall v. Chicago*, 762 F.3d 57 3,578 (7th Cir. 2014) ("It is established that a litigant has no right to a petit jury which contains members of his race or which fairly represents a cross-section of the community."). Accordingly, counsel could have reasonably forewent the unmeritorious claims petitioner proposes. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (8), petitioner contends he was denied the effective assistance of counsel because counsel failed to object to the Commonwealth's use of its peremptory challenges. Petitioner explains that the Commonwealth used all its peremptory challenges to strike men, resulting in a jury that contained only two. Petitioner recalls that one of those men fell ill during trial and was replaced by a woman. Petitioner asserts counsel's "lack of knowledge and failure to challenge the jury selection process . . . allowed for [p]rosecutorial misconduct to trample upon [petitioner's] rights and compromised [petitioner's] right to a fair trial."

The Court holds this portion of claim (8) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland* because petitioner fails to allege facts indicating counsel unreasonably neglected a potentially meritorious objection to the Commonwealth's use of peremptory strikes. Other than to describe the struck jurors as men, petitioner has neither alleged nor attempted to explain why counsel should have suspected that the Commonwealth could not provide sufficient, gender-neutral rationales for striking those jurors. *See Bethea v. Commonwealth*, 297 Va. 730, 748 (2019) (explaining that a defendant's challenge to the Commonwealth's allegedly discriminatory use of its peremptory strikes requires the defendant to demonstrate a prima facie case of discrimination, after which the Commonwealth has the opportunity to offer non-discriminatory reasons for its challenged strikes and the trial court must determine whether any such reasons are pretext for discrimination); *see also Hebert v. Rogers*, 890 F.3d 213, 224 (5th Cir. 2018) (where habeas petitioner failed to demonstrate the prosecution used its peremptory strikes in an intentionally discriminatory

manner, he could not demonstrate he was prejudiced by counsel's failure to argue as much. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (8), petitioner appears to contend his jury was illegally comprised, either because his venire or his jury did not contain enough men or because the Commonwealth used its peremptory strikes to intentionally exclude men.

The Court holds this claim is barred because these non-jurisdictional issues could have been raised at trial and on direct appeal and, thus, are not cognizable in a petition for a writ of habeas corpus. *Slayton*, 215 Va. at 29.

*State Habeas Op.* at 19–21 (alterations in original). The Supreme Court of Virginia's rejection of this claim was eminently reasonable. *See* 28 U.S.C. § 2254(d)(1)–(2).[8] Accordingly, Claim 8 will be DISMISSED.

## I.     Counsel's Hearing Impediment

In Claim 9, Watwood faults the manner is which counsel dealt with his hearing impediment. In denying this claim, the Supreme Court of Virginia stated:

In a portion of claim (9), petitioner contends he was denied the effective assistance of counsel because counsel could not hear M.B.'s responses to questions when he testified at petitioner's trial. Petitioner recalls that counsel requested to move closer to M.B. but that the trial court denied the request and complains that counsel did not further object or seek another solution or preserve this issue for appellate review. Petitioner accuses the court of knowing the courtroom's microphone and speaker system were inadequate prior to trial and claims the court violated the Americans with Disabilities Act by not accommodating counsel's hearing impediment. Petitioner claims that, because counsel could not hear M.B.'s testimony on direct and cross-examination, counsel failed to impeach M.B. on "23 different points," which petitioner summarizes in a table attached to his petition. Further, petitioner alleges counsel's "inability to resolve the dilemma with the Court allowed the Commonwealth's bias and prejudicial rulings to impair [petitioner's] rights and thus denied [petitioner] a fair opportunity to present a meaningful and complete defense. The errors caused a breakdown of the adversarial process and skewed the accuracy of the truth determining process that rendered the Trial result unreliable. [Petitioner] was denied a fair trial and was falsely convicted of a crime he did not commit."

---

[8] The portion of this claim that the Supreme Court of Virginia found defaulted, which Watwood contends is an ineffective assistance counsel claim, is essentially redundant of the claim dismissed by the Supreme Court of Virginia.

The Court holds this portion of claim ([9]) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates that, at the beginning of M.B.'s testimony, counsel alerted the court that neither of them could hear M.B. and asked the court to instruct M.B. to speak louder. The court made a comment regarding the placement of M.B.'s microphone and allowed the Commonwealth to proceed with its direct examination. After M.B. answered several more questions, one of petitioner's attorneys, Pavlinic, stated he needed to move closer to M.B. because he still could not hear. The court stated that it understood and instructed M.B. that he needed to speak loudly enough so everyone in the courtroom could hear him. The court then instructed M.B. to hold the microphone closer to his mouth, instructed that the microphone be turned up as loud as it could go, arranged to have books placed under the microphone, and then commented it was "much better" before allowing the Commonwealth to proceed with questioning M.B. After the Commonwealth questioned M.B. at length, Pavlinic commented that he still could not hear and asked to move closer to M.B. The court stated Pavlinic could do so. Before Pavlinic began cross-examining M.B., he and the court discussed the possibility of his questioning M.B. from a podium that was significantly closer to M.B. because he had not been able to hear M.B.'s testimony. Pavlinic blamed his age and poor hearing. The court stated it would allow Pavlinic to do so if any of the jurors was having trouble hearing M.B. because the jury was approximately twice as far from M.B. as counsel, considering where the podium was initially placed. The court also suggested petitioner's other attorney, Collier, could question M.B. The court again admonished M.B. to speak loudly and, after none of the jurors indicated any trouble hearing M.B., counsel proceeded to question him at great length without any readily apparent trouble hearing his answers. Accordingly, the record does not bear out petitioner's accusation that the court refused to accommodate counsel's concerns about hearing M.B., nor does it corroborate petitioner's otherwise unsupported speculation that counsel's difficulty hearing M.B.[ ] inhibited counsel's cross-examination or otherwise materially impacted counsel's efforts in defending petitioner.

Further, to the extent petitioner contends counsel's difficulty hearing M.B. constructively denied petitioner the assistance of counsel during that portion of his trial such that prejudice to his defense should be presumed, petitioner fails to allege facts demonstrating as much. Even if Pavlinic had difficulty hearing throughout M.B.'s testimony, there is no indication Collier continued to experience the same difficulty after the issue was first brought to the court's attention at the beginning of M.B.'s testimony. Accordingly, petitioner cannot complain of being actually or constructively denied the assistance of counsel during a critical stage of his trial, such that prejudice to the outcome should be presumed. *See United States v. Ragin*, 820 F.3d 609, 617–18 (4th Cir. 2016) (explaining the "imited contexts" in which the actual or constructive denial of counsel will warrant a presumption of prejudice); *see also Lainfiesta v. Artuz*, 253 F.3d 151, 157–58 (2d Cir. 2001) (holding "temporary . . . deprivation of a second attorney of choice is [not] a structural error"). Thus, petitioner has failed to demonstrate that counsel's

performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (9), petitioner contends the trial court erred in failing to appropriately accommodate counsel's trouble hearing M.B.

The Court holds this claim is barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. *Slayton*, 215 Va. at 29.

*State Habeas Op.* at 21–23 (alteration in original, except for final two alterations). Watwood fails to demonstrate that the Supreme Court of Virginia's dismissal of this claim involved an unreasonable determination of law or facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Furthermore, Watwood fails to demonstrate that counsel performed deficiently or that he was prejudiced by counsel's failure to further challenge the Circuit Court's alleged lack of accommodation of counsel's hearing problem. Claim 9 will be DISMISSED.

### J. Exclusion of Evidence Regarding Catherine Bivens

In Claim 10, Watwood asserts that counsel performed deficiently with respect to eliciting evidence related to his ex-wife, Catherine Bivens. In denying this claim, the Supreme Court of Virginia stated:

In a portion of claim (10), petitioner contends he was denied the effective assistance of counsel because counsel "failed to prepare for, support with case law, object and properly argue against" and "preserve for appeal" an evidentiary ruling that petitioner claims prevented him from effectively demonstrating that M.B.'s mother, Bivens, was biased against petitioner and influenced M.B. to lie about petitioner molesting him. Petitioner explains that the trial court improperly thwarted counsel's ability to question Bivens as an adverse witness and improperly prevented counsel from cross-examining Bivens "for bias," her "coercion of [M.B.]," and "vilification of [petitioner]" by not taking "judicial notice" of Code § 8.01-401(A), which governs the identification and questioning of adverse witnesses. Petitioner contends that, as a result of the trial court's errors, he was unable to adequately demonstrate to the jury that Bivens' disdain for petitioner likely led M.B. to fabricate his allegations.

The Court holds this portion of claim (10) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates counsel called Bivens as a defense witness and successfully requested to question her as adverse. Accordingly, petitioner's vague assertion regarding counsel's purported lack of

proper preparation, knowledge, or objection does not adequately specify what more counsel could have done with regard to treating Bivens as an adverse witness. Similarly, petitioner fails to specify how, had counsel performed differently, they might have elicited additional, beneficial testimony from Bivens. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (10), petitioner contends he was denied the effective assistance of counsel because counsel "failed to prepare for, support with case law, object and properly argue against" and "preserve for appeal" another evidentiary ruling petitioner claims prevented him from effectively demonstrating Bivens' bias against him and influence over M.B. Petitioner explains that the trial court was aware of Bivens' negative feelings toward petitioner but nonetheless limited the admission of a "rant" Bivens authored on Facebook regarding petitioner. Petitioner contends that, as a result of the trial court's errors, he was unable to adequately demonstrate to the jury that Bivens' disdain for petitioner likely led M.B. to fabricate his allegations.

The Court holds this portion of claim (10) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates that, when questioning Bivens, counsel sought to introduce a protracted series of Facebook messages she exchanged from May 2015 through July 2015 with a woman petitioner dated and married after Bivens ("the exchange"). When the Commonwealth objected, counsel endeavored at length to convince the court the entire exchange was admissible. The court disagreed and allowed only a small portion into evidence. Counsel also tried unsuccessfully to admit the exchange through the recipient of Bivens' messages. Accordingly, petitioner's vague assertion regarding counsel's purported lack of proper preparation, knowledge, or objection does not adequately specify what more counsel could have done with regard to admitting additional portions of the exchange. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (10), petitioner contends he was denied the effective assistance of counsel because counsel "failed to prepare for, support with case law, object and properly argue against" and "preserve for appeal" another evidentiary ruling petitioner claims prevented him from effectively demonstrating Bivens' bias against petitioner and that she may have influenced M.B. to lie about petitioner molesting him. Petitioner faults the trial court for not taking "judicial notice" of Rules 2:104(b) and (e) and 2:404(b) and, in turn, for "disrupting" the testimony of Amanda Spiers, Karin Stretchko, Susan Stine, and Julie Garner regarding Bivens' bias against petitioner and the potential impact of that bias on M.B.'s accusations. Petitioner contends that, as a result of the trial court's errors, he was unable to adequately demonstrate to the jury that Bivens' disdain for petitioner likely led M.B. to fabricate his allegations.

The Court holds this portion of claim (10) satisfies neither the "performance" nor the "prejudice' prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates Spiers did not testify during the guilt phase of petitioner's trial. Further, petitioner fails to identify a point at which the court limited the testimony of Stine or Stretchko regarding Bivens' bias against petitioner or potential influence on M.B. Finally, although petitioner references portions of his trial transcript in which the court sustained objections to several questions counsel asked Garner, petitioner fails to specify what more counsel could have done to change the court's decision with respect to any of those objections. Accordingly, petitioner's vague assertion regarding counsel's purported lack of proper preparation, knowledge, or objection fails to demonstrate that counsel's performance was deficient or that here is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (10), petitioner contends that, as described in the preceding portions of claim (10), the trial court improperly limited his ability to present evidence of Bivens' bias and influence over M.B.

The Court holds this claim is barred because these non-jurisdictional issues could have been raised at trial and on direct appeal or were raised and decided in those venues and, thus, are not cognizable in a petition for a writ of habeas corpus. *Henry*, 265 Va. at 249; *Slayton*, 215 Va. at 29.

*State Habeas Op.* at 23–26. Watwood fails to demonstrate that the Supreme Court of Virginia's rejection of this claim involved an unreasonable determination of law or facts. *See* 28 U.S.C. § 2254 (d)(1)–(2). Furthermore, Watwood fails to demonstrate that counsel performed deficiently, or that he was prejudice by counsel's decision not to challenge any of the Circuit Court's limitations on exposing Bivens's bias. Claim 10 will be DISMISSED.

## K.   M.B.'s Therapist's Testimony

In Claim 12, Watwood complains that counsel performed deficiently with respect to the testimony of M.B.'s therapist, Leigh-Ann White. In denying this claim, the Supreme Court of Virginia stated:

In a portion of claim (12), petitioner contends he was denied the effective assistance of counsel because counsel "was not able to cite authority, law and case law, properly argue, and object against the improper evidentiary rulings during the direct [examination] of the Commonwealth's expert witness, Leigh-Ann White." Petitioner explains that the trial court improperly denied counsel the ability to treat White as an adverse witness and did not take "judicial notice" of Rule 2:607(b),

which allows a witness to be treated as adverse to the party who calls him or her. As a result, petitioner complains, counsel could not ask White leading questions, and the trial court "erred repeatedly and exhibited bias." As evidence of the latter assertion, petitioner simply directs the Court to an excerpt from his trial transcript in which the trial court and counsel have a lengthy debate regarding the correctness and wisdom of several of the trial court's rulings. Petitioner asserts he "was harmed by . . . Counsel's failure to cite Virginia Statute, rules of Evidence, and case law in support of their objections to the Court's rulings. [Petitioner] was harmed because the Court's ignorance of the law frustrated . . . Counsel's attempt at providing a meaningful and complete defense. [Petitioner] was harmed because of the breakdown of the adversarial process which skewed the accuracy of the truth determining process that ultimately rendered the Trial results unreliable."

    The Court holds this portion of claim (12) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates White was M.B.'s therapist, that counsel called her as a witness, and the trial court repeatedly refused counsel's request to treat her as adverse. Petitioner has not specified what more counsel might have done to have White deemed an adverse witness nor has petitioner attempted to describe what additional testimony counsel might have elicited from White had they been allowed to treat her as adverse. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

    In another portion of claim (12), petitioner appears to contend the trial court erred in refusing to allow petitioner to treat White as an adverse witness.

    The Court holds this portion of claim (12) is barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. *Slayton*, 215 Va. at 29.

*State Habeas Op.* at 27 (alterations in original). Watwood fails to demonstrate that the Supreme Court of Virginia's rejection of this claim was unreasonable. Furthermore, Watwood fails to demonstrate that counsel was deficient or that he was prejudice by appellate counsel's failure to challenge, on appeal, the trial court's rulings with respect to Ms. White. Accordingly, Claim 12 will be DISMISSED.

## L.  Multiplicitious Indictments

    In Claim 14, Watwood faults counsel for failing to object to allegedly multiplicitious indictments. In denying this claim, the Supreme Court of Virginia stated:

In a portion of claim (14), petitioner contends he was denied the effective assistance of counsel because counsel did not notice and object to petitioner's "multiplicitious indictments." Petitioner explains that his indictments for six counts each of forcible sodomy and object sexual penetration all alleged petitioner committed those offenses between August 2013 and January 2014. Accordingly, petitioner asserts, five of his indictments for forcible sodomy and five of his indictments for object sexual penetration were "multiplicitious" because they "did not require proof of an additional fact above and beyond the first indictment." Similarly, petitioner argues one of his indictments for indecent liberties was "multiplicitious" because both of his indictments for indecent liberties alleged those offenses occurred between August 2013 and January 2014. Petitioner contends "his convictions on these multiplicitious indictments violated [his] rights under the double jeopardy clause of the Fifth Amendment" and "[t]he inattention and neglect by . . . Counsel allowed for the Commonwealth to impair [petitioner's] fundamental rights."

In his reply to the motion to dismiss, petitioner notes that this Court and the Court of Appeals has expressed that a defendant can be "be tried and convicted of no more than one offense committed within the period covered by any one indictment, regardless of whether there was proof of a number of similar incidents within a particular period." *See Clinebell v. Commonwealth*, 3 Va. App. 362, 364 (1986) (*affirmed in part and reversed in part*, 235 Va. 319 (1988)), *Pine v. Commonwealth*, 121 Va. 812, 839 (1917). Petitioner asserts also that his indictments ran afoul of *Blockburger v. United States*, 284 U.S. 299 (1932), because he received "multiple sentences for a single offense during a defined time period."

The Court holds this portion of claim (14) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. To render effective assistance, counsel is not required to perceive or raise every potentially meritorious issue. Instead, counsel must "investigate and . . . research a client's case in a manner sufficient to support informed legal judgments" and "demonstrate a basic level of competence regarding the proper legal analysis governing each stage of a case." *United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017). "Under this standard, counsel may be constitutionally required to object when there is relevant authority strongly suggesting" that the objection would be well founded and that it would benefit counsel's client. *Id.* In other words, "[w]hile defense attorneys need not predict every new development in the law, they are obliged to make arguments that are sufficiently foreshadowed in existing case law." *United States v. Morris*, 917 F.3d 818, 824 (4th Cir. 2019) (internal quotation marks and alteration omitted). On the other hand, counsel does not render deficient performance by "failing to raise novel arguments that are unsupported by then-existing precedent," "to anticipate changes in the law, or to argue for an extension of precedent." *Id.* at 823; *see also Ragland v. United States*, 756 F.3d 597, 601 (8th Cir. 2014) ("[C]ounsel's failure to anticipate a rule of law that has yet to be articulated by the governing courts, and failure to raise a novel argument based on admittedly unsettled legal questions does not render his performance constitutionally ineffective.") (internal quotation marks and citation omitted); *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999) ("[A]s an

acknowledgment that law is no exact science, the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized.") (internal quotation marks and citation omitted).

Here, the record, including petitioner's indictments and his trial transcript, demonstrates petitioner is correct that his indictments for each of his three types of offenses covered the same time period. However, petitioner cites no authority from a Virginia court or from any other jurisdiction that supports his contention that such indictments, standing alone, violate the proscription on "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). To the contrary, as this Court has explained,

> [w]here one or more of the acts are committed at a certain time, and other or the same acts are committed at a different time, the pleader may charge them in different counts; and, if they are proved, the defendant may be convicted of the several offenses so committed on different occasions, and punished for each offense . . . .

*Bateman v. Commonwealth*, 205 Va. 595, 598–99 (1964) (internal quotation marks and citation omitted). Here, counsel secured a bill of particulars informing petitioner his charges were based on six separate events of molestation, which M.B. then testified to at trial.

Moreover, as this Court recently noted when denying a claim of ineffective assistance similar to petitioner's, there is "no clearly established Supreme Court precedent addressing the constitutionality of multiple identical indictments," and we are not aware of any binding authority from this Court on the question. *Dodd v. Clarke*, 2021 WL 397987 (Va. Feb. 4, 2021); *see also Crawford v. Pennsylvania*, 714 F. App'x 177, 180 (3d Cir. 2017) ("The Supreme Court precedent . . . . [on the subject of charging a defendant with numerous, undifferentiated counts of the same offenses] is very general and lacks a specific application to the problems encountered in prosecutions of child sexual abuse.") Although other jurisdictions have wrestled with whether and under what circumstances multiple, identically worded indictments raise due process and double jeopardy concerns, they acknowledge there are scenarios under which such indictments can be constitutional. *See, e.g., Hardy v. Beightler*, 538 F. App'x 624, 629 (6th Cir. 2013) (finding no double jeopardy problem despite identically-worded counts because "[o]n several occasions, the prosecution was careful to explain to the jury the differences between the identical rape counts and the identical kidnapping counts"); *Ballard v. Dilworth*, 230 W. Va. 449, 456–59, 230 S.E.2d 643, 650–53 (W. Va. 2013) (explaining why, under the circumstances of the habeas petitioner's case, his ten identical indictments pertaining to his sexual abuse of a child did not violate double jeopardy or his due process rights). Petitioner makes no attempt to argue and cites no authority suggesting that the circumstances of his case fell outside those scenarios, much less so clearly that counsel was obligated to suspect and raise a potential double jeopardy violation. *See Snider v. United States*, 908 F.3d 183, 192 (6th Cir. 2018) ("We have repeatedly held that counsel is not ineffective for failing to predict developments in the law, unless they were clearly foreshadowed by existing decisions."). Thus, petitioner fails to carry his burden of demonstrating

that counsel's performance was deficient because they neglected an issue that was "strongly suggested" by relevant precedent. *Morris*, 917 F.3d at 826.

Further, counsel appreciated that the indistinguishability of petitioner's indictments might provide an avenue for attacking petitioner's charges, or at least gaining more information regarding their factual basis. The record, including the manuscript record from petitioner's criminal proceedings and the trial transcript, demonstrates that, pre-trial, counsel requested a bill of particulars on the contention that the indictments provided petitioner with "no way of knowing . . . what allegation made by [M.B.] would pertain to any of the individual indictments." Counsel argued this circumstance not only impaired petitioner's ability to defend himself but it would also render it impossible to know whether the jury was returning a unanimous verdict on any given count. Although counsel argued the bill of particulars should specify the evidence on which the Commonwealth was relying to distinguish between each count of each type of offense with which petitioner was charged, the circuit court determined the bill of particulars need only identify the number of incidents of abuse predicating petitioner's charges. As a result, the Commonwealth informed petitioner "the indictments allege six separate episodes."

As the bill of particulars foreshadowed, M.B. testified in detail to six separate times when petitioner came into his bedroom at night and abused him. Nonetheless, at the close of the Commonwealth's evidence, counsel moved to strike all of petitioner's indictments, in part, because the Commonwealth had not sufficiently tied specific events to each of petitioner's indictments. This, counsel argued, raised the risk that jurors would not be "considering the same set of facts for each particular count" and that they could reach a less than unanimous guilty verdict on any given count. Counsel contended the court should dismiss all petitioner's charges unless it could devise a way to "allocate some particular factual basis to some particular count." Ultimately, the court struck four of petitioner's charges for taking indecent liberties with a minor, although it is not exactly clear on what basis. The court otherwise denied counsel's motion to strike.

Finally, when discussing jury instructions, counsel raised the "problem that [they had] been raising since [they had] been in the case about the lack of specificity of the indictments." Counsel explained that the instructions did not differentiate regarding the "factual basis pertaining to any individual counts," thus making it difficult for counsel to defend against any specific count and raising concern that the jury could convict petitioner with less than unanimous verdicts. The trial court disagreed, concluding M.B.'s testimony was sufficiently detailed to demonstrate several unique episodes of abuse. Accordingly, counsel attempted repeatedly, with varying success, to press the indistinguishable nature of petitioner's indictments to his advantage, thus reinforcing the adequacy of counsel's performance. *Cf. Williams v. Kelly*, 816 F .2d 939, 950 ( 4th Cir. 1987) ("Counsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another."). Further, having failed to articulate a potentially meritorious challenge counsel might have raised to his indictments, petitioner cannot claim he was harmed by counsel's purported neglect. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that,

but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (14), petitioner appears to contend he was improperly convicted on "multiplicitous indictments."

The Court holds this portion of claim (14) is barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. *Slayton*, 215 Va. at 29.

*State Habeas Op.* at 28–32 (alterations in original). Watwood fails to demonstrate that the Supreme Court of Virginia's rejection of this claim was unreasonable. *See* 28 U.S.C. § 2254(d)(1)–(2). Further, Watwood fails to demonstrate that appellate counsel performed deficiently, or that he was prejudiced, because appellate counsel did not raise the issue of multiplicitous indictments on appeal. Accordingly, Claim 14 will be DISMISSED.

## M.   Investigations

In Claim 15, Watwood complains that counsel failed to adequately challenge the lack of investigation by the relevant agencies. In denying this claim, the Supreme Court of Virginia stated:

> In a portion of claim (15), petitioner contends he was denied the effective assistance of counsel because counsel did not "understand the law, prepare, submit motions, and object to the lack of investigation undertaken by the Commonwealth." Petitioner explains that the Chesterfield Police Department did not report petitioner's suspected abuse of M.B. to CPS as required by Code §§ 63.2-1507 and -1509. Petitioner complains that "seven additional mandatory reporters" also did not report M.B.'s allegations of abuse as required by Code § 63.2-1509 and faults the trial court for "not tak[ing] judicial notice of CPS regulations Virginia Code 40-705-78." Petitioner asserts the police, the Commonwealth, and the trial court failed to appreciate the lack of the statutorily required CPS investigation, which "denied [petitioner] exculpatory and impeaching evidence that would have been uncovered during" such an investigation. Petitioner adds that, because CPS and the Chesterfield Police Department receive federal funds, his equal protection rights were violated when the police and CPS choose not to adequately investigate M.B.'s allegations against petitioner. Petitioner suggests counsel could have filed a writ of mandamus or a "motion to compel" to force the police to report M.B.'s alleged abuse to CPS and force CPS to investigate. Petitioner asserts that, "[i]f a proper CPS investigation had occurred, the absurdity of the allegations would have become apparent and the allegations dismissed."

> The Court holds this portion of claim (15) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Counsel could have reasonably determined that pressing for further

investigation of M.B.'s allegations by government authorities might harm petitioner by producing information that was unfavorable to his defense. Therefore, counsel could have justifiably determined not to pursue the possibility of compelling CPS or the police to perform additional investigation. Further, petitioner has failed to specify what beneficial information such an investigation might have generated. *See Beaver*, 93 F.3d at 1195 ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (15), petitioner contends he was denied the effective assistance of counsel because counsel "failed to conduct an investigation involving the interviews of witnesses, collaterals, alleged victim and siblings, and the mother. Consequently, the Jury never heard testimony from numerous individuals who interacted with [M.B.] on a regular basis and how they did not see or experience any indicator that [M.B.] was being sexually abused." Petitioner asserts "[t]he inattention, neglect, and lack of strategy exhibited by Trial Counsel allowed the bias and errors of the Commonwealth to impair [petitioner's] rights and prevent [petitioner] from preparing for trial and presenting impeaching and exculpatory evidence. These errors caused a breakdown of the adversarial process, and skewed the accuracy of the truth determining process that ultimately rendered the trial results unreliable."

The Court holds this portion of claim (15) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner fails to proffer any evidence to support his summary speculation that "witnesses," "collaterals," M.B., his siblings, or Bivens would have spoken with counsel had counsel sought to interview them. Nor does petitioner provide any support for his summary assertion that those individuals would have provided information that counsel could have used to defend petitioner. *See Beaver*, 93 F.3d at 1195. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

*State Habeas Op.* at 32–34 (alterations in original). Watwood fails to demonstrate that the

Supreme Court of Virginia's dismissal of this claim involved an unreasonable determination of

law or facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Accordingly, Claim 15 will be DISMISSED.

N.      **Search Warrant**

In Claim 16, Watwood contends that he was denied effective assistance of counsel with

respect to the search warrant for his home.  In dismissing this claim, the Supreme Court of Virginia

stated:

> In a portion of claim (16), petitioner contends he was denied the effective
> assistance of counsel because counsel did not challenge the veracity of the affidavit
> that supported the search warrant for petitioner's home.  Petitioner claims the search
> warrant was issued based on M.B.'s accusation that petitioner's closet might
> contain relevant evidence, such as pictures of naked boys or "sex toys."  However,
> petitioner contends, M.B.'s drawing of the closet and its potential contents in no
> way matched what officers found when they searched petitioner's house.  Petitioner
> contends "[t]his violation of the Fourth Amendment and its prohibition against
> unreasonable search and seizure is just one of many Constitutional violations that
> [he] was subjected to in the Commonwealth's effort to harass [him] and to get a
> conviction rather than seek justice."
>
> The Court holds this portion of claim (16) satisfies neither the
> "performance" nor the "prejudice" prong of the two-part test enunciated in
> *Strickland*.  First, petitioner fails to allege facts demonstrating counsel neglected a
> potentially meritorious challenge to the search of petitioner's home.  In order to
> challenge the search based on the veracity of the allegations supporting the
> underlying warrant, counsel would have had to, as an initial matter, "make[] a
> substantial preliminary showing that the affidavit for the . . . warrant contain[ed]
> deliberately false or recklessly false misstatements or omissions necessary to a
> finding of probable cause." *Barnes v. Commonwealth*, 279 Va. 22, 33 (2010).
> Here, petitioner alleges no facts suggesting counsel might have credibly argued that
> any officer involved in securing the search warrant for petitioner's home knew of
> or recklessly disregarded any potential falsity in M.B.'s account of what might be
> found in petitioner's closet. *See United States v. Cavazos*, 288 F.3d 706, 709–10
> (5th Cir. 2002) (although application for a search warrant contained false
> information, no suppression was warranted because there was "no evidence to
> suggest that the officers had deliberately or recklessly provided the false
> information").  Further, petitioner neither alleges nor attempts to explain why, had
> counsel suppressed any evidence produced during the search of petitioner's home
> or otherwise impugned the legality of the search, the jury might have returned a
> different verdict on any of petitioner's charges.  Thus, petitioner has failed to
> demonstrate that counsel's performance was deficient or that there is a reasonable
> probability that, but for counsel's alleged error, the result of the proceeding would
> have been different.
>
> In another portion of claim (16), petitioner contends he was denied the
> effective assistance of counsel because counsel failed to challenge officers'
> violation of Code § 19.2-56 during the search of petitioner's home. Petitioner
> explains that the statute allows the owners and occupants of a premises to be present

during a search of that premises but that officers turned off petitioner's video surveillance system during the search, thus depriving petitioner of the ability to be "present." Petitioner claims he had been watching the search via the cameras. Petitioner submits that "[t]his violation of the Fourth Amendment and its prohibition against unreasonable search and seizure is just one of many Constitutional violations that [petitioner] was subjected to in the Commonwealth's effort to harass [petitioner] and to get a conviction rather than seek justice."

The Court holds this portion of claim (16) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Contrary to petitioner's apparent contention, Code § 19.2-56 does not entitle the owners or occupants of a premise to be present for a search thereof. Instead, the statute allows owners or occupants to be present "when permitted . . . by the officer in charge of the conduct of the search." Accordingly, counsel could have reasonably determined that claiming a violation of Code § 19.2-56 would not be a viable avenue for contesting the legality of the search. Further, petitioner neither alleges nor attempts to explain why, had counsel suppressed any evidence produced during the search of petitioner's home or otherwise impugned the legality of the search, the jury might have returned a different verdict on any of petitioner's charges. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (16), petitioner contends the search of his home was unlawful for several reasons.

The Court holds this portion of claim (16) is barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. *Slayton*, 215 Va. at 29.

*State Habeas Op.* at 34–36. Watwood fails to demonstrate that the Supreme Court of Virginia's dismissal of this claim was unreasonable. *See* 28 U.S.C. § 2254(d)(1)–(2). Furthermore, Watwood fails to demonstrate appellate counsel acted deficiently or that he was prejudiced by appellate counsel's failure to pursue any challenge to the search of Watwood's home on appeal. Accordingly, Claim 16 will be DISMISSED.

## O. Omitted Evidence

In Claim 17, Watwood contends that he was denied the effective assistance of counsel because counsel failed to introduce critical, exculpatory evidence. In denying this claim, the Supreme Court of Virginia stated:

In a portion of claim (17), petitioner contends he was denied the effective assistance of counsel because counsel did not present evidence that petitioner claims would have demonstrated a "high probability" that he did not have the "opportunity" to molest M.B. and would have impugned M.B.'s claims. Petitioner explains counsel should have presented evidence that "a puppy was in the master bedroom" and that the puppy woke up Bivens whenever petitioner got up during the night. The Court holds this portion of claim (17) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates counsel did present evidence regarding petitioner's puppy and that it would wake Bivens in the night. On direct examination, petitioner testified he adopted a puppy, the puppy had separation anxiety, petitioner would have to let the puppy out repeatedly during the night, and his doing so would wake up Bivens "every time." Petitioner does not specify what more counsel should have done to present evidence regarding the puppy. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (17), petitioner contends he was denied the effective assistance of counsel because counsel did not present evidence to effectively explain the absence of petitioner's DNA on stuffed animals taken from M.B.'s bed. Petitioner contends counsel should have complied with petitioner's request to engage an expert to opine on the absence of petitioner's DNA on the stuffed animals. Petitioner posits that such expert testimony could have demonstrated petitioner's DNA was not found on the toys because it was never present in the first place and not because the toys were laundered. To support this claim, petitioner provides only a scholarly article titled, "Persistence of DNA from laundered semen stains: Implications for child sex trafficking cases." The article describes a study during which researchers found that "complete DNA profiles can be obtained from laundered semen stains on school uniform-type clothing with an eight-month lag time between semen deposition and laundering, despite multiple washes and stains from two semen donors." In addition to consulting an expert regarding "the number and type of washes required to completely remove semen stains and associated DNA," petitioner suggests counsel should have questioned M.B., Bivens, or "the Au Pair" regarding whether the stuffed animals had been washed and, if so, how many times. Petitioner suggests counsel should have pursued this line of inquiry to counter "the ignorance or perhaps perjury" of a forensic scientist, Theresa Francis, who testified at petitioner's trial that a single washing could have removed petitioner's semen and DNA from the stuffed animals. Petitioner asserts counsel's neglect allowed the jury to infer petitioner's DNA was removed from the stuffed animals through washing rather than concluding petitioner's semen was never on the toys, which would have contradicted M.B.'s testimony that it was.

The Court holds this portion of claim (17) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates M.B. testified some of the "sticky stuff" petitioner "peed" when he molested M.B. had gotten onto

M.B.'s stuffed animals. M.B. believed the stuffed animals had been washed "a few times" prior to police collecting them in October 2015, which was well after petitioner stopped abusing M.B. The stuffed animals were subjected to forensic testing. The Commonwealth presented no evidence regarding that testing but counsel called Francis, a scientist with the Virginia Department of Forensic Science, to testify that no blood or semen was detected on M.B.'s stuffed animals. On cross-examination, Francis acknowledged that whether an item retains a deposit of seminal fluid can be affected by how the object is used or the environmental factors to which it is exposed and that she would not expect to find seminal fluid if an item had been washed. Accordingly, petitioner is suggesting counsel should have been prepared with scholarly articles or a second forensic expert to counter the testimony Francis gave on cross-examination. Counsel could have reasonably failed to act with such foresight. In any event, petitioner has not named any expert who would have been willing to testify in support of petitioner's theory that it is unlikely his semen was ever on M.B.'s stuffed animals, and petitioner's identification of a relevant scholarly article is insufficient to demonstrate such an expert exists or that Francis might have changed her position on the subject had she been confronted with the article. Moreover, petitioner proffers no support for his speculation that, had counsel attempted to question M.B., Bivens, or "the Au Pair" regarding whether and how many times the stuffed animals were washed, any of those individuals would have provided further relevant information, beneficial or otherwise. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (17), petitioner contends he was the victim of prosecutorial misconduct because the Commonwealth ignored the exculpatory import of the absence of petitioner's DNA on M.B.'s stuffed animals.

The Court holds this portion of claim (17) is barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. *Slayton*, 215 Va. at 29.

*State Habeas Op.* at 36–38. Watwood fails to demonstrate that the Supreme Court of Virginia's dismissal of this claim involved an unreasonable application of law or facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Furthermore, Watwood fails to demonstrate that appellate counsel acted deficiently or that he was prejudiced by appellate counsel's failure to assert that the prosecution engaged in misconduct with respect to any exculpatory evidence. Accordingly, Claim 17 will be DISMISSED.

### P.   Memory Expert

In Claim 18, Watwood faults counsel for failing to employ a memory expert. In dismissing this claim, the Supreme Court of Virginia stated:

> In claim (18), petitioner contends he was denied the effective assistance of counsel because counsel did not comply with petitioner's request that he employ Loftus as a "memory expert" to aid the trial court in assessing M.B.'s competency to testify and to testify regarding how memory operates and the reliability of M.B.'s testimony. Petitioner contends M.B. has "organic neurological damage" as a result of his being in an orphanage for the first two years of his life and that a "memory expert" could have opined how that damage and numerous other factors indicated M.B.'s account of petitioner's molesting him was not reliable or was fabricated. To support this claim, petitioner provides Loftus' contact information, a brief summary of her experience, and lists of scholarly articles regarding brain development, memory, and emotion.
>
> The Court holds claim (18) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates counsel called Dr. Leigh D. Hagan, an expert in clinical and forensic psychology, to testify to the purportedly improper and incomplete therapy to which M.B. was subject. Further, petitioner proffers no evidence that any expert, Loftus or otherwise, would have agreed with petitioner's theory regarding the fallibility of M.B.'s memory or the incredibility of his allegations. The articles petitioner provides and the conclusions he derives from them do not suggest an expert would have concurred in those conclusions. *See Vandross*, 986 F.3d at 452 ("When a petitioner's ineffective assistance of counsel claim rests on trial counsel's failure to call particular witnesses, expert or otherwise, we require a specific proffer as to what an expert witness would have testified.") (internal quotation marks and ellipsis omitted). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

*State Habeas Op.* at 38–39. Watwood fails to demonstrate that the Supreme Court of Virginia's rejection of this claim was unreasonable. *See* 28 U.S.C. § 2254(d)(1)–(2). Accordingly, Claim 18 will be DISMISSED.

### Q.  Cumulative Ineffective Assistance of Counsel

In Claim 19, Watwood claims that he was denied the effective assistance of counsel based on the cumulative effect of counsel's errors.  In rejecting this claim, the Supreme Court of Virginia stated:

> "Having rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right to effective assistance of counsel." *Lenz v. Warden of the Sussex I State Prison*, 267 Va. 318, 340, *cert. denied*, 542 U.S. 953 (2004).

*State Habeas Op.* at 39.  Watwood fails to demonstrate that in any instance counsel performed deficiently.  Accordingly, Watwood fails to demonstrate that the Supreme Court of Virginia's rejection of this claim was unreasonable.  *See* 28 U.S.C. § 2254(d)(1)–(2).  Accordingly, Claim 19 will be DISMISSED.

### R.  Cumulative Ineffective Assistance of Appellate Counsel

In Claim 20, Watwood complains that he was denied the effective assistance of appellate counsel because appellate counsel failed to raise a variety of alleged trial errors.  In denying this claim, the Supreme Court of Virginia stated:

> In a portion of claim (20), petitioner contends he was denied the effective assistance of appellate counsel because counsel "fail[ed] to address the specific Court, Prosecution, and Police conduct covered in [claims] 6, 8, 10, 11, 15, 16, and 22." Petitioner adds that appellate counsel's "adherence . . . to the contemporaneous objection rule when not warranted" denied petitioner a fair appeal and asserts that counsel should have invoked the "ends of justice" or "good cause" exceptions to Rule 5A:18 to present "(Habeas Grounds 1–18)" on appeal. Petitioner appears to suggest appellate counsel should have also raised claims of ineffective assistance of counsel on direct appeal because "there was an admission of ineffective assistance of counsel in the Memorandum in Support of a 'Motion to Set Aside the Verdict and Enter a Judgment of Acquittal.'"
>
> The Court holds this portion of claim (20) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including records from petitioner's appeals to the Court of Appeals and to this Court, demonstrates appellate counsel raised numerous issues on appeal, including arguing the evidence did not support petitioner's convictions because M.B.'s testimony was inherently incredible, challenging the trial court's

limiting the extent to which petitioner could subpoena M.B.'s school and medical records, and contesting the trial court's refusing to admit the entirety of Bivens' Facebook "rant." Accordingly, appellate counsel raised, at least in part, some of the issues petitioner claims he should have. *See Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) (the selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal). Moreover, petitioner has not attempted to explain why counsel should have foregone those issues or the attendant arguments in favor of the other issues petitioner summarily identifies. *United States v. Mason*, 774 F.3d 824, 829 (4th Cir. 2014) ("As a general matter, only when ignored issues are clearly stronger than those presented should we find ineffective assistance for failure to pursue claims on appeal.") (internal quotation marks omitted). Further, to the extent petitioner claims counsel should have raised unpreserved issues on appeal, petitioner's general accusation fails to demonstrate counsel unreasonably focused on raising properly preserved issues. *See Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) ("[A]n effective attorney will weed out weaker arguments, even though they may have merit."). Similarly, to the extent petitioner claims appellate counsel should have raised claims of ineffective assistance of trial counsel on direct appeal, counsel could have reasonably determined that such claims were better resolved in a habeas proceeding. *See McGinnis v. Commonwealth*, 296 Va. 489, 495 n.1 (2018) ("We have consistently held that claims of ineffective assistance of counsel, *even if asserted during proceedings in the circuit court*, are not reviewable on direct appeal.") Further, in neither this claim nor in any previous claim has petitioner articulated a potentially meritorious claim of ineffective assistance of trial counsel. Finally, petitioner does not allege or attempt to explain why any of the claims he summarily suggests appellate counsel should have raised would have succeeded on appeal, where they would have been subject to standards of review different from those employed in a trial court. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (20), petitioner appears to contend he was denied the effective assistance of appellate counsel because counsel did "[n]ot identify[] meritorious claims to present to the U.S. Supreme Court by certiorari."

The Court rejects this claim because petitioner had no constitutional right to counsel when petitioning the United States Supreme Court for a writ of certiorari and, therefore, had no right to the effective assistance of counsel. *See, e.g.*, *Steele v. United States*, 518 F.3d 986, 988 (8th Cir. 2008) ("Due process does *not*, however, guarantee a constitutional right to counsel for a litigant seeking to file a certiorari petition in the United States Supreme Court.").

In another portion of claim (20), petitioner appears to contend he was denied the effective assistance of appellate counsel because counsel "[f]ail[ed] to respond to the Commonwealth's Response to the Supreme Court appeal and the errors of law presented therein."

The Court holds this portion of claim (20) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in

*Strickland.* The record, including the records pertaining to petitioner's appeal in this Court, demonstrates the Commonwealth did not file a brief in opposition to petitioner's petition for appeal. Thus, counsel had no opportunity to file a reply. In any event, petitioner has failed to specify the purported errors of law to which counsel should have responded, describe what counsel's response should have been, or explain how any such response would have altered this Court's decision to refuse petitioner's appeal and deny his subsequent petition for rehearing. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (20), petitioner appears to contend he was denied the effective assistance of appellate counsel because counsel "[f]ail[ed] to submit a draft of the appeal to [petitioner] before submission for review and comment when specifically requested."

The Court holds this portion of claim (20) fails to satisfy the "prejudice" prong of the two-part test enunciated in *Strickland.* Petitioner does not allege or attempt to explain how his reviewing any document appellate counsel filed with the Court of Appeals or this Court might have altered either court's decision to reject petitioner's appeals. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

*State Habeas Op.* at 39–42. Watwood fails to demonstrate in any instance that he was denied the

effective assistance of appellate counsel. Further, Watwood fails to demonstrate that the Supreme

Court of Virginia's dismissal of this claim involved an unreasonable application of law or facts.

*See* 28 U.S.C. § 2254(d)(1)–(2). Accordingly, Claim 20 will be DISMISSED.

**S.     Alleged Constitutional Law Violations**

In Claim 21, Watwood alleges:

Constitutional Law Violations - Mr. Watwood was denied the right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution when Trial and Appellate Counsel did not raise the lack of constitutionality of the law under which the Defendant was convicted given the actions of the Commonwealth of Virginia.

(ECF 1, at 91.)  The Supreme Court of Virginia rejected this claim, because it merely asserted

"conclusions or opinions without providing factual support and, therefore, will not support the

issuance of a writ of habeas corpus. *Penn v. Smyth*, 188 Va. 367, 370–71 (1948)." *State Habeas Op.* at 42.

In Claim 21, Watwood contends that he was denied the effective assistance of counsel because counsel failed to raise a broad-based challenge to the constitutionally of the laws under which he was prosecuted because, *inter alia*, the government was "infected with confirmation bias," forsook "its duty to investigate and produce evidence," etc. (ECF No. 1, at 91.) Thereafter, Watwood rehashes many of the alleged trial errors mentioned and addressed earlier. These claims of ineffective assistance of counsel lack merit for the reasons set forth above. Watwood fails to demonstrate that counsel acted in a constitutionally deficient manner by failing to raise this challenge and in the manner Watwood now suggests. Moreover, Watwood fails to demonstrate any possibility of a different result had counsel raised this mishmash of claim to the Virginia courts. Accordingly, Claim 21 will be DISMISSED.

## VI. Conclusion

The Motions to Dismiss, (ECF Nos. 14, 16), will be GRANTED. Watwood's claims and the action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Final Order shall issue.

Date: 7 March 2024
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge

50